1997 SD 112

**The PEOPLE of The State of South Dakota, in the Interest of G.R.F., Minor Child, And Concerning L.R. And M.S.**

**No. 19894.**

Supreme Court of South Dakota.

Considered on Briefs July 24, 1997.

Decided Sept. 3, 1997.

John R. Murphy, Rapid City, for appellant, M.S., Father.

Gustav K. Johnson, Rapid City, for appellee, L.R., Mother.

Mark Barnett, Attorney General, Joan P. Baker, Assistant Attorney General, Pierre, for appellee, State of South Dakota.

PER CURIAM.

## ACTION

[¶ 1.] Father, M.S., and State appeal from a trial court's order dismissing the abuse and neglect action against Mother, L.R., and transferring jurisdiction to the Oglala Sioux Tribe. We affirm.

## FACTS

[¶ 2.] Father, a non-Indian, and Mother, an Indian, met in Torrington, Wyoming in March 1994 and became involved in a relationship which Father ended in November 1994. When they separated, Father was aware Mother was pregnant with his child. In March 1996 Father learned Mother had given birth to their daughter, G.R.F.

[¶ 3.] In June 1995 Mother moved to Rapid City. Prior to that time Mother and her four children lived in various off-reservation locations in Wyoming, Nebraska, and South Dakota, as well as on the Pine Ridge Indian Reservation from time to time according to public assistance applications filed by Mother.[1] On August 8, 1995, G.R.F. was born in a Rapid City hospital. Mother listed her home address on the hospital admission papers as Rapid City.

[¶ 4.] On November 5, 1995, Mother notified her landlord she intended to move out of the trailer in which she and G.R.F. were living. By November 28, she had changed her mind but landlord advised her the trailer home was already rented to a third party. The following day, Mother executed a document entitled "Custody Agreement" giving temporary custody of G.R.F. to two guardians, one of whom was related to Mother, for a period of three months.

[¶ 5.] The next day, November 30, 1995, one of the guardians took G.R.F. to the Department of Social Services (DSS) to obtain Title XIX benefits. At DSS, a case worker observed G.R.F. to be in need of immediate medical attention. The guardian took G.R.F. to a doctor and she was admitted to a Rapid City hospital that same day.

[¶ 6.] G.R.F. remained hospitalized until December 4, 1995. During that time, DSS was unsuccessful in locating Mother and, upon the child's release from the hospital, the Pennington County Sheriff's Office took emergency custody of her. The following day, the trial court ordered temporary legal custody with DSS for sixty days. Physical custody was granted to one of the guardians where G.R.F. remained until July 17, 1996 when she was placed in foster care.

[¶ 7.] At the end of the sixty days, on February 5, 1996, DSS filed an abuse and neglect petition against Mother. G.R.F. was adjudged to be abused and neglected on February 21, 1996. On March 20, 1996, the Oglala Sioux Tribal Court issued an order accepting jurisdiction under 25 U.S.C. § 1911(b) and awarding temporary custody of G.R.F. to the tribal court pending a hearing on the matter.

[¶ 8.] By June 14, 1996, paternity test results revealed M.S. to be the child's father and at a hearing held in the state trial court on August 13, 1996, DSS recommended custody be awarded to Father. At this same hearing, Mother moved to dismiss the action from state court for lack of jurisdiction and transfer jurisdiction to the Oglala Sioux Tribal Court. As Father was unrepresented and

---

1. Applications listing a Pine Ridge address were filed by Mother on October 21, 1986; July 25, 1989; May 5, 1992; and August 8, 1994.

State was not prepared to proceed, the matter was delayed for briefing by all parties. A subsequent hearing was held in the state trial court on September 26, 1996 at which time all parties presented argument. Both State and Father objected to dismissal and transfer of the action. Father further objected to Mother's proposed findings of fact and conclusions of law.

[¶ 9.] At the September hearing, the trial court orally ordered dismissal of the action and transferred jurisdiction to the tribe. On October 24, 1996, the trial court signed an order reducing its oral order to writing. Mother's proposed findings and conclusions were adopted by the trial court.

[¶ 10.] Father and State appeal the trial court's ruling, raising essentially the same two issues:

1. Whether the Oglala Sioux Tribe had exclusive jurisdiction over this matter pursuant to 25 U.S.C. § 1911(a) of the Indian Child Welfare Act?

2. Whether the evidence was sufficient to support the finding that Mother was domiciled on the Pine Ridge Indian Reservation at times relevant to this action?

## DISCUSSION

[¶ 11.] We review a trial court's grant or denial of a motion to dismiss by determining whether the pleader was entitled to judgment as a matter of law. *Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592; *Estate of Billings v. Deadwood Congregation of Jehovah Witnesses*, 506 N.W.2d 138, 140 (S.D.1993). In this appeal, whether Mother is entitled to judgment as a matter of law turns on determining what point in time jurisdiction attaches under ICWA and where G.R.F. was then domiciled.

[¶ 12.] **1. Whether the Oglala Sioux Tribe had exclusive jurisdiction over this matter pursuant to 25 USC § 1911(a) of the Indian Child Welfare Act?**

[¶ 13.] Mother is an enrolled tribal member and Child is eligible for enrollment. The statutory requirements of ICWA control this action. 25 U.S.C. §§ 1901–1963; SDCL 26–7A–2. ICWA recognizes a tribe's significant interest in self-government and in its ability to assert its interest in its children. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52, 109 S.Ct. 1597, 1610, 104 L.Ed.2d 29, 49 (1989); Jones, *Indian Child Welfare: A Jurisdictional Approach*, 21 Ariz.L.Rev. 1123, 1128 (1980).

[¶ 14.] 25 U.S.C. § 1911(a) of ICWA sets forth the jurisdictional framework for child custody proceedings and grants a tribe exclusive jurisdiction if: 1) the child is a ward of the tribal court, regardless of where the child resides or is domiciled; 2) the child resides within the reservation of his or her tribe; or 3) the child is domiciled within the reservation.[2] Where § 1911(a) does not apply, 25 U.S.C. § 1911(b) affords states and tribes concurrent but presumably tribal jurisdiction over child custody proceedings.[3] In enacting the jurisdictional provisions of ICWA, "Congress intended that as a general principle, Indian tribes should have authority to determine custody issues involving Indian children." *In re Adoption of Halloway*, 732 P.2d 962, 968 (Utah 1986).

[¶ 15.] In *Holyfield, supra*, the Supreme Court held that the removal of children to a hospital outside the reservation for their

---

**2.** 25 U.S.C. § 1911(a) provides:

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

**3.** 25 U.S.C. § 1911(b) provides:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.
(emphasis original).

birth, and subsequent placement for adoption and abandonment of the children in state court did not deprive the tribal court of exclusive jurisdiction where the children's domicile was on the reservation. In that case, the children's parents were residents and domiciliaries of the Choctaw Reservation who extended some effort to assure their twin babies were born off-reservation. The parents' and children's domicile never changed from the reservation despite their temporary absence from it. The Court extensively cited ICWA's purpose in its opinion.

▆▆▆ [¶ 16.] In the present case, the facts represent that Mother has lived a somewhat transient lifestyle, residing in various locations both off and on the reservation for the past several years. The *Holyfield* Court, discussing the definition of "domicile," recognized that "one can reside in one place but be domiciled in another" and that "domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." 490 U.S. at 48, 109 S.Ct. at 1608, 104 L.Ed.2d at 46.[4] G.R.F. has resided in Rapid City since her August 1996 birth and has never resided within a reservation. However, an illegitimate child's domicile follows her mother's. *Id.* The trial court found that on December 5, 1995, the date a petition for temporary legal custody was filed with the trial court, and the date the trial court heard the matter and awarded custody to DSS, Mother was domiciled on the reservation and therefore, the tribal court had exclusive jurisdiction over the custody proceedings under 25 U.S.C. § 1911(a).

▆▆▆ [¶ 17.] State and Father claim the relevant time period for determining jurisdiction is the time the abuse and neglect took place, which in this case, was sometime prior to November 30, 1995, the date of G.R.F.'s hospitalization, when both Mother and G.R.F. were living in Rapid City. They argue that abuse and neglect proceedings are quasi-criminal in nature, therefore the determinant time period is when the conduct that gave rise to the cause of action occurred. This Court has previously held, in an abuse and neglect action, that "[p]rocedures determining the custody of dependent children are not criminal, are not quasi-criminal, but instead constitute a civil action, or a special proceeding of a civil nature." *In re C.J.H.*, 371 N.W.2d 345, 349 (S.D.1985) (internal citations omitted). Moreover, in a prior case determining the proper forum under ICWA, we stated:

> The locus of the act of a member is not conclusive. Rather, the test is a broader one, hinging on whether the matter demands exercise of the tribe's responsibility of self-government. There can be no greater threat to essential tribal relations and to the tribal power of self-government than to interfere in questions of custody of tribal members.

*In the Matter of Guardianship of D.L.L. and C.L.L.*, 291 N.W.2d 278, 281 (S.D.1980) (citing *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Littell v. Nakai*, 344 F.2d 486 (9thCir.1965)). *Cf. Wells v. Wells*, 451 N.W.2d 402, 405 (S.D.1990) (recognizing the effect of· a change of domicile on the jurisdiction of a domestic relations case involving enrolled tribal members). Adherence to State's and Father's argument would not promote the purpose of ICWA which bases jurisdiction on the child's relationship with the tribe through residency, domicile, or as a ward of the tribal court.[5]

▆▆▆ [¶ 18.] Although how jurisdiction attaches is defined by § 1911 of ICWA, the statute does not address when is the relevant point of inquiry for attachment of jurisdic-

---

4. "Domicile" does not carry the same meaning as "residence." " 'Residence' signifies living in [a] particular locality while 'domicile' means living in that locality with intent to make it a fixed and permanent home." Black's Law Dictionary 485 (6th Ed 1990).

5. Father and State also attempt to argue a due process "minimum contacts" test, more appropriate to a determination of in personam juris-

diction, see SDCL 15–7–2, or a "significant connection" test, more appropriate to a question involving subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act, *see In re M.C.S.*, 504 N.W.2d 322 (S.D.1993). These are not the tests provided by ICWA, however, to find subject matter jurisdiction over custody proceedings involving Indian children.

tion. *Holyfield* cautioned against applying state law definitions to interpret federal law. The Court stated "[o]ne reason for this rule of construction is that federal statutes are generally intended to have uniform nation-wide application." *Holyfield*, 490 U.S. at 43, 109 S.Ct. at 1605–06, 104 L.Ed.2d at 43.

[¶ 19.] A federal court addressing the point at which jurisdiction attaches stated "[t]he general rule is that the jurisdiction of the federal court is determined at the time of the filing of the complaint." *In re General Motors Corp.*, 594 F.2d 1106, 1139 (7thCir.1979) (citing *Mollan v. Torrance*, 9 Wheat. 537, 22 U.S. 537, 539, 6 L.Ed. 154 (1824); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)). More recently, a court addressing an ICWA-based jurisdictional question noted "[i]t is a well-established rule in both federal and state courts that jurisdiction over a case is established at the time an action is filed and cannot be voided by later events." *Spear v. McDermott*, 121 N.M. 609, 916 P.2d 228, 234 (App.1996) (citing *Mid–American Waste Sys., Inc. v. City of Gary, Ind.*, 49 F.3d 286, 292 (7thCir.1995); *F. Alderete Gen. Contractors, Inc. v. U.S.*, 715 F.2d 1476, 1480 (Fed.Cir.1983); *Resolution Trust Corp. v. Foust*, 177 Ariz. 507, 869 P.2d 183, 193 (Ct. App.1993); *Foster v. Nordman*, 244 S.C. 485, 137 S.E.2d 600 (1964)). In *Spear*, 916 P.2d at 234–35, jurisdiction was determined based on the children's and mother's domicile at the time abuse and neglect proceedings were initiated. The court held mother's change in domicile to the reservation during pendency of the proceedings did not divest the state court of jurisdiction obtained when the action was first brought. In *Halloway*, 732 P.2d at 966, also decided under ICWA's jurisdictional requirements, the Supreme Court of Utah stated "[T]he propriety of the trial court's assumption of jurisdiction turns on [the child's] domicile at the time these proceedings were initiated." Maternal aunt's removal of the child from the reservation for adoption proceedings in state court did not change the child's domicile where the mother was domiciled on the reservation; the ruling

of the state court that it had jurisdiction was vacated.

[¶ 20.] This rule confirms the trial court's conclusion that jurisdiction is determined as of December 5, 1995, the date the abuse and neglect action was initiated in the trial court. We affirm on this issue.

[¶ 21.] **2. Whether the evidence was sufficient to support the finding that Mother was domiciled on the Pine Ridge Indian Reservation at times relevant to this action?**

[¶ 22.] State and Father next claim the trial court erred in finding Mother to be domiciled on the reservation on December 5, 1995. The trial court made findings of fact that Mother's primary residence was on the reservation beginning November 30, 1995 and continuing through September 26, 1996, the date of the hearing, and that Mother resided and was domiciled on the reservation on December 5, 1995. Although the settled record establishes Mother lived in Rapid City, and therefore off-reservation, from June 1995 to November 30, 1995, her affidavit indicates her move to Rapid City was temporary for the purposes of obtaining adequate living arrangements for her children and expected baby and that it was not her intention to remain in Rapid City indefinitely. She confirmed by affidavit her move to Rapid City was a move from her "established home on the Pine Ridge Indian Reservation." At the hearing, her attorney informed the trial court that Mother was born and raised on the reservation and still has family members living there. Mother's affidavit states when she returned to the reservation November 30, 1995, she lived in a shack near her brother's home until she could complete living arrangements for herself and her children in a mobile home on the reservation. The record also includes two affidavits filed by the DSS social worker assigned to the case; neither of these contains facts disputing Mother's affidavit.

[¶ 23.] In granting Mother's motion to dismiss, the trial court relied on her affidavit. Affidavit evidence is reviewed de novo. *Miller v. Weber*, 1996 SD 47, ¶ 7, 546 N.W.2d 865, 867; *First Nat'l Bank of Biwabik v.*

*Bank of Lemmon*, 535 N.W.2d 866, 871 (S.D. 1995). In *In re Estate of Eberle*, 505 N.W.2d 767, 771 (S.D.1993), we stated the following regarding evidence produced by affidavit:

> Affidavits, although made under oath, are ordinarily not considered competent evidence. Affidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them. Nevertheless, the ultimate determination of whether issues of fact should be resolved by affidavit is left in the sound discretion of the trial court. SDCL 15–6–43(e) provides 'when a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.'

 [¶ 24.] There is no evidence the trial court abused its discretion in determining the question of Mother's domicile based on her affidavit. The trial court stated it would hear oral testimony on this matter if there were factual issues raised that had not been submitted by affidavit. No testimony was forthcoming even though a DSS social worker was present at the September hearing and presumably could have been called by Father or State to dispute the affidavit. Father and State chose instead to rely on DSS reports previously filed with the trial court. The trial court again noted it was "confined to the affidavits and testimony and will not consider hearsay or unsupported allegations."

 [¶ 25.] State argues the trial court erred in not considering such evidence as is permitted at dispositional hearings. *See* SDCL 26–7A–90; *C.J.H.*, 371 N.W.2d at 350. SDCL 26–7A–1(17) defines "dispositional hearing" as "a hearing after adjudication at which the court makes an interim or final decision in the case." State claims that because G.R.F. had already been adjudged abused and neglected by the trial court, the September hearing constituted a dispositional hearing. However, the September 1996

hearing was to determine the trial court's jurisdiction over the matter, and not to consider evidence regarding proper disposition of G.R.F. SDCL 19–9–14 provides that the rules of evidence "apply to all actions and proceedings in the courts of this state" with eight exceptions. Jurisdictional hearings are clearly not included among the list of statutory exceptions. *See, e.g., State v. Milk*, 519 N.W.2d 313, 315 (S.D.1994) (holding a juvenile transfer hearing is not a dispositional hearing in juvenile court as excepted from SDCL 19–9–14). A trial court's evidentiary rulings are reviewed under an abuse of discretion standard. *Milk*, 519 N.W.2d at 315; *Zens v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 479 N.W.2d 155, 159 (S.D. 1991). The trial court did not abuse its discretion in excluding from consideration hearsay evidence and unsupported allegations.

 [¶ 26.] Our de novo review of the affidavits leads us to the same result as that reached by the trial court: on December 5, 1995, the date these proceedings were initiated in the state trial court, Mother was domiciled on the Pine Ridge Indian Reservation. Therefore, G.R.F. was domiciled on the reservation on that date as well. No reliable evidence to the contrary was produced at the hearing.

 [¶ 27.] The typical concerns of "forum-shopping," raised by State and Father on appeal, do not stand on the same ground when the question of proper forum involves ICWA, which has as its purpose tribal self-government and the tribe's interest in the welfare of its children. *See* 25 U.S.C. § 1901(5). *Cf. New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S.Ct. 2378, 2386, 76 L.Ed.2d 611, 620 (1983) ("'The unique historical origins of tribal sovereignty' and the federal commitment to tribal self-sufficiency and self-determination make it 'treacherous to import ... notions of preemption that are properly applied to ... other [contexts].'") (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 672 (1980)).[6] Recognizing an Indian tribe's pro-

---

6. We note also that if the facts of this case were different and the State were found to have had

tectable interest in its Indian children, the *Holyfield* Court stated:

> The protection of this tribal interest is at the core of the ICWA, which recognizes that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents. This relationship between Indian tribes and Indian children domiciled on the reservation finds no parallel in other ethnic cultures found in the United States. It is a relationship that many non-Indians find difficult to understand and that non-Indian courts are slow to recognize. It is precisely in recognition of this relationship, however, that the ICWA designates the tribal court as the exclusive forum for the determination of custody and adoption matters for reservation-domiciled Indian children, and the preferred forum for nondomicilary Indian children.

490 U.S. at 52–53, 109 S.Ct. at 1610–1611, 104 L.Ed.2d at 49 (citing *Halloway*, 732 P.2d at 969–70).

jurisdiction, had Mother fled to the reservation she may have been beyond the State's subpoena power. "It is beyond contention that South Dakota officials and courts do not have jurisdiction over Indian trust lands." *State v. Lufkins*, 381 N.W.2d 263, 266 (S.D.1986) (citing *DeCoteau v.*

## CONCLUSION

[¶ 28.] We agree with the trial court that Mother, and therefore G.R.F., was domiciled on the reservation on December 5, 1995. Therefore, jurisdiction rests exclusively with the tribe pursuant to 25 U.S.C. § 1911(a). Affirmance of the trial court's decision to dismiss the action and transfer jurisdiction to the tribe does not determine the outcome of the abuse and neglect action involving G.R.F. but decides only which court will determine that outcome. We affirm.

[¶ 29.] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.

*District County Court*, 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975); *Annis v. Dewey County Bank*, 335 F.Supp. 133 (D.S.D.1971)).