2001 SD 65

**STATE of South Dakota, ex rel. Stephanie JEALOUS OF HIM, Plaintiff and Appellee,**

v.

**David T. MILLS, Jr., Defendant and Appellant.**

No. 21454.

Supreme Court of South Dakota.

Considered on Briefs March 19, 2001.

Decided May 23, 2001.

Mark Barnett, Attorney General, Pierre, Patrick M. Ginsbach, Special Assistant Attorney General, Hot Springs, Attorneys for plaintiff and appellee.

Michael P. Acosta Dakota Plains Legal Services, Pine Ridge, Attorneys for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.]  In this child support enforcement action, we affirm the circuit court's order refusing to dismiss for lack of jurisdiction.

### Background

[¶ 2.]  Stephanie Jealous of Him (the mother) and David Mills are enrolled members of the Oglala Sioux Tribe.  They met in 1997 while Mills was employed as a police officer and the mother was employed as a dispatcher on the Pine Ridge Indian Reservation.  Mills had been married since 1995.  As a result of a sexual relationship with Mills, the mother gave birth to a son in July 1998. The child lives with her on the reservation.

[¶ 3.]  The mother applied for Aid to Families with Dependant Children (AFDC).  Between July 1998 and January 1999, she received $1,284 from the State of South Dakota for the care of her child. When she applied for public assistance, she listed Mills as the child's father.  She also assigned her right to the State to collect past due child support payments. The State undertook this action to recover the money it expended on behalf of the child.

[¶ 4.]  Mills was served with a Summons, Petition, and an Order to Show Cause by personal service on December 3, 1998.[1]  Service was accomplished at a Rapid City, South Dakota address.  Initially, he responded to the Petition by denying he was the child's father and requesting that the circuit court order paternity testing. He submitted to testing at a clinic in Rochester, Minnesota in March 1999.  At that

---

1.  Mills seems to dispute that he was personally served; however, the circuit court specifically found that personal service occurred. Mills did not challenge this finding on appeal.

time, Mills reported a Rochester address to the clinic. When the clinic requested identification, Mills produced two driver's licenses: one from South Dakota and one from Minnesota. Neither license had an address on the Pine Ridge Indian Reservation. Paternity testing confirmed that Mills was the father of the child.

[¶ 5.] Mills next moved to dismiss the support action. He denied that the circuit court had personal jurisdiction over him or subject matter jurisdiction over the controversy. He claimed that he had insufficient contacts off the reservation to confer personal jurisdiction on the court. Additionally, he argued that the cause of action arose on the reservation and involved two tribal members domiciled on the reservation. In his view, by accepting jurisdiction the circuit court would infringe on the sovereignty of the Oglala Sioux Tribal Court. Mills insisted that while he may have intermittently resided off the reservation, he always intended to return; thus, his domicile remained there. The State, on the other hand, offered evidence showing a contrary intent. Most of Mills' employment since 1995 had been off the reservation. He listed Rapid City addresses to register his vehicle, to obtain a driver's license, to apply for court appointed counsel, and to request unemployment benefits.

[¶ 6.] The circuit court held an evidentiary hearing on Mills' motion to dismiss. After listening to live testimony, the court denied the motion. It found that Mills had waived any right to challenge personal jurisdiction; he had filed a response to the paternity action without asserting that defense.[2] In addition, the court found that Mills was domiciled off the reservation. Therefore, the court concluded that it pos-

sessed concurrent jurisdiction with the tribal court. As this proceeding was first in time, it could properly proceed.[3] Mills appeals from the denial of his motion to dismiss.

### Analysis and Decision

[¶ 7.] The question is whether the circuit court had jurisdiction over this child support action instituted by South Dakota to recover AFDC benefits. Mills, the mother, and the child are all members of the Oglala Sioux Tribe and conception took place on the Pine Ridge Indian Reservation. The mother and the child are domiciled on the reservation. Mills asserts that his domicile remains there as well. We review the circuit court's denial of his motion to dismiss by inquiring whether he was entitled to judgment as a matter of law. *In Re G.R.F.*, 1997 SD 112, ¶ 11, 569 N.W.2d 29, 32 (citations omitted). A jurisdictional challenge presents a question of law subject to *de novo* review. *Red Fox v. Hettich*, 494 N.W.2d 638, 642 (S.D. 1993) (citations omitted).

[¶ 8.] Mills claims that this action offends the "infringement test" articulated by the United States Supreme Court in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). To Mills, this case is a paternity and support dispute between two enrolled tribal members domiciled on the reservation. If his contentions were correct, tribal court jurisdiction would indeed be exclusive. *See Harris v. Young*, 473 N.W.2d 141, 144 (S.D.1991)(citing *Fisher v. Dist. Court of Sixteenth Jud. Dist.*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); *Wells v. Wells*, 451 N.W.2d 402, 405 (S.D.1990)).

---

**2.** In fact, when questioned by the circuit court at the evidentiary hearing, Mills' counsel asserted his belief that Mills could not challenge personal jurisdiction.

**3.** There is no indication that any action was instituted in the Oglala Sioux Tribal Court.

[¶ 9.] A contrary result may be warranted, however, if Mills is domiciled off the reservation. *See Harris*, 473 N.W.2d at 145 (discussing *Wells*, 451 N.W.2d at 405–06). When one party becomes domiciled off the reservation, state and tribal courts enjoy concurrent jurisdiction, and the case may be adjudicated by whichever court first obtains valid personal jurisdiction. *Harris*, 473 N.W.2d at 145. "Indians [who] go beyond reservation boundaries have generally been held subject to nondiscriminatory state law[s][.]" *Wells*, 451 N.W.2d at 405 (citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114, 119 (1973))(further citations omitted). Under these circumstances tribal sovereignty is not threatened. *Id.*[4]

[¶ 10.] Although Mills asserts that both he and the child's mother are domiciled on the reservation, the circuit court ruled in its conclusions of law "[t]hat the Defendant is domiciled *off* the Pine Ridge Reservation." (Emphasis added). The crux of Mills' argument is that the circuit court erred in this ruling. Residence and domicile are not interchangeable concepts. *In Re G.R.F.*, 1997 SD 112, ¶ 16 n. 4, 569 N.W.2d at 33. "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *In Re Estate of Galada*, 1999 SD 21, ¶ 12, 589 N.W.2d 221, 223 (citations omitted). Domicile consists of presence in the forum jurisdiction plus intent to remain there. When the domicile of a party is in doubt, a proper determination requires evaluation of all the surrounding circumstances. *See Id.* at ¶ 14, 589 N.W.2d 221. *See also* Wright and Miller, Federal Practice and Procedure § 3612 at 529 (2nd ed 1984)(footnoted information omitted). Some appropriate considerations include the location of employment, the driver's license address, and the place of voter registration. *Id.* at 530–31. A person's declared intentions may be discounted when they conflict with the facts. *Id.* at 532.

[¶ 11.] A finding of domicile is generally considered a mixed question of law and fact. Wright and Miller, *supra* at 540–41. Underlying issues of intent, however, are generally seen as questions of fact. *See McDonough v. Kahle*, 1999 SD 14, ¶ 14, 588 N.W.2d 600, 603. *See also* 1 Childress and Davis, Federal Standards of Review § 2.21 at 2–158 (2nd ed 1992)("[I]ntent to remain" is a factual issue subject to clearly erroneous review). On appeal, we review findings of fact deferentially. *Harter v. Plains Ins. Co.*, 1998 SD 59, ¶ 9, 579 N.W.2d 625, 629 (citations omitted). The credibility of witnesses and the weight accorded their testimony are best left to the trial judge, and "we give due regard to the trial court's opportunity to observe the witnesses and the evidence." *In Re Estate of Amundson*, 2001 SD 18, ¶ 12 n. 4, 621 N.W.2d 882, 885 (citing *In re Estate of Elliott*, 537 N.W.2d 660, 662 (S.D.1995)).

[¶ 12.] While Mills may claim that he intended to remain domiciled on the Pine Ridge Reservation, the circuit court was presented with substantial information to

---

4. Though not dispositive on the question of subject matter jurisdiction, it is noteworthy that Mills used the state court process to request paternity testing. Availing oneself of a state court system by a party contesting its jurisdiction may be considered as a factor supporting concurrent subject matter jurisdiction. *Harris*, 473 N.W.2d at 146. Indeed, we recognize the general principle that "subject matter jurisdiction can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Id.* (Citations omitted). Such action by the contesting party, however, may be a factor indicating that tribal sovereignty will not be infringed by concurrent jurisdiction. *Id.*

the contrary. As early as 1995–1996, Mills was employed off the reservation in Rapid City. In 1997, the same year that his child was conceived, Mills claims he was living on the reservation. However, when he registered his vehicle in Pennington County, he reported a Rapid City address. Similarly, he testified that in 1998 he was living with his mother on the reservation. Yet in May of that year he gave a Rapid City address when applying for a hunting and fishing license with the South Dakota Game, Fish, and Parks Department. Later that same year he obtained a driver's license and applied for unemployment benefits using a Rapid City address. An investigator from the Office of Child Support Enforcement testified that she sent a certified letter to Mills at a Rapid City address in September 1998, and he signed for it.

[¶ 13.] Assertions from both Mills and his wife reveal some inherent contradictions. In a brief to the circuit court, Mills claimed he was not personally served; instead, "[s]ervice was made at his wife's residence in Rapid City upon one of his nephews." On the other hand, his wife testified that in December 1998, she received the summons from a process server. Mills' credibility further weakened with his difficulty in pinpointing his residence for much of the time between 1995 and early 1999. He confirmed that early in 1999 he moved to Rochester, Minnesota. His only explanation for these inconsistencies was that he "was driving back and forth" between Rapid City and the reservation.

[¶ 14.] Mills offered evidence that he initially moved to Rapid City "to go to school." He also testified that he and his wife moved to Rochester to pursue coursework in police studies. Upon this testimony, Mills submitted proposed findings of fact to the circuit court, which included the following: "The Defendant has left the Pine Ridge Reservation for educational purposes, but is a domiciliary of the Pine Ridge Indian Reservation." The circuit court rejected this proposal and found "[t]hat the Defendant has had employment off the reservation since 1995." *See* Wright and Miller, *supra* § 3619 at 571.

[¶ 15.] The record amply supports the circuit court's finding that Mills resided and was domiciled off the reservation. *See In Re Estate of Galada*, 1999 SD 21, ¶ 14, 589 N.W.2d at 223. We conclude that the court did not err in denying the motion to dismiss. *See In Re G.R.F.*, 1997 SD 112, ¶ 11, 569 N.W.2d at 32.

[¶ 16.] Affirmed.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.