ZINTER, Justice
(concurring in result).
[¶25.] In my view, “removal” under SDCL 49-36-6(2) is ultimately determined by a person’s domicile rather than a person’s “voting residence.” Although a person’s domicile and residence are usually the same, the two are not synonymous. The law recognizes that a person may have more than one residence but only one legal domicile. Because the only reasonable view of the facts reflects that Heinemeyer changed his domicile when he sold his old home in Madison and moved to his new rural home near Wentworth, that move constituted a removal from Subdivision 10, creating a vacancy under SDCL 49-36-6(2). I therefore concur in result.
[¶ 26.] Both the lead opinion and the dissent focus on Heinemeyer’s “voting residence,” “voter registration,” and status as a “voter” under various election statutes in *779 SDCL Title 12.[2] The dissent suggests “the question before this Court is much larger and more complicated than whether or not the Board was entitled to refuse to seat Heinemeyer.” Infra, ¶ 36. “Instead, [the dissent suggests] we must ask ... did Heinemeyer maintain a voting residence and his right to vote in Madison, South Dakota, elections, such that he was duly elected by the voters of Madison to the Subdivision 10 seat and never vacated that seat.” Id. The dissent even suggests this is a matter of overturning the will of the voters under the South Dakota Constitution.[3]
[¶ 27.] Heartland’s board of directors, however, did not challenge Heinemeyer’s voting residence or qualifications under the South Dakota Constitution, Title 12, or SDCL 49-36-1 and 49-36-11 when Hein-emeyer ran for director of Subdivision 10 at the November 2006 election. Indeed, there is no dispute that Heinemeyer remained registered to vote in Subdivision 10 through the November 2006 election. Further, following the election, there was no challenge to Heinemeyer’s certificate of election to the office of Heartland Consumers Power District, representing District 10, for the six-year term beginning January 1, 2007. The board only later refused to seat Heinemeyer, contending that a vacancy occurred because he had removed himself from Subdivision 10. See Stipulation of Facts # 16, and SDCL 49-36-6(2), which provides that “[a] vacancy on the board of directors shall exist in the event of the [r]emoval from the subdivision from which the director was elected.” (Emphasis added.)
[¶ 28.] Therefore, we need only determine whether, by moving from his old home in Subdivision 10 to his new home in Subdivision 8, Heinemeyer removed himself from Subdivision 10. Ultimately, as is explained below, this only presents us with the question of Heinemeyer’s domicile following his move to his new home: a question in which voter registration is only one factor. See infra ¶ 30.
[¶29.] As the lead opinion observes, there is no statutory definition of the term “removal” in SDCL 49-36-6(2). Therefore, we must look to the plain and ordinary definition of that word. As the lead opinion further observes, Black’s Law Dictionary defines “removal” as “[t]he transfer or moving of a person or thing from one location, position, or residence to another.” Black’s Law Dictionary 1344 (8th ed. 2004).
[¶ 30.] Although this dictionary definition uses a generic reference to moving one’s residence, the precise term for legal purposes is domicile. As we recognized in In re Estate of Galada, 1999 SD 21, ¶ 22, 589 N.W.2d 221, 223:
No one can have more than one domicile at a time. We have said “domicile is established by physical presence in a *780 place in connection with a certain state of mind concerning one’s intent to remain there.” “Domicile is the place with which a person has a settled connection for certain legal purposes, either because his home is there or because that place is assigned to him by law.”
(citations omitted). Thus, “ ‘[d]omicile’ does not carry the same meaning as ‘residence.’ ‘Residence’ signifies living in [a] particular locality while ‘domicile’ means living in that locality with intent to make it a fixed and permanent home.” People In Interest of G.R.F., 1997 SD 112, ¶ 16, n4, 569 N.W.2d 29, 33 (citing Black’s Daw Dictionary 485 (6th ed. 1990)). This means that “one can reside in one place but be domiciled in another.” Id. ¶ 16, 569 N.W.2d at 33 (citing the common-law principles discussed in Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989)). But, “[w]hen the domicile of a party is in doubt, a proper determination requires evaluation of all the surrounding circumstances[,]” only one of which is a person’s voter residence. State ex rel. Jealous of Him v. Mills, 2001 SD 65, ¶ 10, 627 N.W.2d 790, 793. Further, although a person’s intent is an essential element of domicile, “a person’s declared intentions may be discounted when they conflict with the facts.” Id.
[¶ 31.] Although the facts of this case have been discussed in the other opinions, a number of additional stipulated and undisputed facts must be mentioned. First, there is no dispute that Heinemeyer moved himself and his physical possessions from his old home in Madison to his new rural home on a golf course near Went-worth. That new home is about twelve to fifteen miles from Madison. Further, the parties stipulated that Heinemeyer’s prior home in Madison was a three-bedroom, 2,700 square foot structure he sold for $165,000. His new home is a four-bedroom, 3,400 square foot structure he built for $270,000 (plus $50,000 for land acquisition). In comparison, after reviewing the photographs, it is difficult to charitably describe Heinemeyer’s $150 per month, one-bedroom, upstairs apartment that he shared with an unrelated acquaintance and co-tenant. Furthermore, under that sharing arrangement, Heinemeyer conceded that he “typically” was “not there [at the apartment] overnights”: he conceded that the co-tenant spent most nights there. In fact, Heinemeyer conceded that he had no bed and had spent less than ten nights at the apartment,[4] Thus, the circuit court specifically found that Heinemeyer “currently sleeps” in his Wentworth home, a finding that Heinemeyer has not challenged on appeal.
[¶ 32.] Additionally, when shown photographs of the contents of the apartment, Heinemeyer disclaimed ownership of any of the personal property, excepting only a table, some limited clothing, dishes, soap, and a towel. When asked what prompted him to go to such an apartment, Heinem-eyer indicated: “I am either working [at my job in Madison] or might have an event to go to [in Madison].” He further indicated that he obtained the apartment partly to try and satisfy the residence requirement for serving on the board, “and [he] wanted to have a place during the day.” He admitted, however, that when not working, most of his time was spent at his Wentworth home. And, he never testified that the apartment was his fixed and permanent home where he intended to remain. On the contrary, when he entertained, he did so at his Wentworth home and not the apartment. Likewise, his Wentworth home was the place for his *781 family. Heinemeyer indicated that he was divorced and one of the reasons he built the Wentworth home was to make it more attractive for his children to come and spend time with him. He also indicated that his fiancée had been at the apartment fewer than ten times. He finally indicated that for purposes of real estate tax assessment, he filed a “Certificate of Owner-Occupied Dwelling” on his Wentworth home.
[¶ 33.] In my judgment, the only reasonable view of these facts indicates that when Heinemeyer built and moved to his new home, he established his domicile there rather than his limited use apartment that was used only for his daytime convenience and to get around the removal statute. Although Heinemeyer did indicate he did not intend to leave the Madison community,[5] that was not the relevant inquiry. His domicile was the relevant question and the uncontested facts rather obviously establish that his new home became his domicile. After all, Heinemeyer did not challenge the circuit court’s finding that he sleeps in the Wentworth home, and there is no dispute that he did not even have a bed in the Madison apartment. Under the totality of the facts, Heinemeyer is asking the courts to ignore reality. We should not do so.[6]
[¶ 34.] For the foregoing reasons, Heinemeyer established a new domicile when he sold his home in Madison and moved to his new home near Wentworth. Therefore, no matter where his voting residence or voting registration, and notwithstanding his intent to remain a part of the Madison community, Heinemeyer removed himself from the subdivision from which he was elected.
[If 35.] KONENKAMP, Justice, joins this concurrence in result.

. The lead opinion and dissent analyze SDCL 12-1-4, which defines "voting residence,” but only for purposes of SDCL Title 12. See SDCL 12-1-4 (defining voting residence "for purposes of this title [Title 12]”). The lead opinion and dissent also analyze SDCL 49-36-1 and 49-36-11, which prescribe voting residency qualifications for the election of district directors. None of these provisions indicate when a director has removed himself from a subdivision within the meaning of SDCL 49-36-6(2).

. The dissent suggests that we are concerned with a significant public question concerning the "protection” of our citizens’ "voting franchise” under the South Dakota Constitution. Infra, ¶¶ 38, 43. It is, however, quite clear that South Dakota Constitution Art VII, § 2 only governs the right to vote on elections and questions submitted to the voters of the state. The Constitution does not purport to regulate when a director has removed himself from a subdivision within the meaning of SDCL 49-36-6(2).

. Heinemeyer testified that he had used a fold-out couch.

. As the lead opinion points out, the circuit court erred as a matter of law in focusing on Heinemeyer's ties with the Madison community. See supra ¶¶ 17-19. The dissent does not consider this fundamental error. I join paragraph nineteen of the lead opinion's opinion discussing why Heinemeyer’s Madison community ties are not relevant in a case like this where Heinemeyer's new home is outside the Madison municipal boundaries but in the Madison community.

. The dissent’s result is premised on its view that Heinemeyer was only “temporarily absent from [his Madison apartment] when at work or at his Wentworth residence.” Infra ¶ 65. From my perspective, there is no evidence to support such a view of the uncontested facts.