#25950-a-DG

**2011 S.D. 94**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CELESTINE AND BAHWASHUNG
MERRILL,                                          Plaintiffs and Appellants,

  v.

ADAM ALTMAN,                                      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE EUGENE E. DOBBERPUHL
Retired Circuit Judge

* * * *

ADAM G. BRIDGE
Sisseton-Wahpeton Oyate
 Public Defender's Office
Agency Village, South Dakota          Attorneys for plaintiffs
                                       and appellants.


ADAM ALTMAN
Aberdeen, South Dakota                Pro se appellee.

JODI L. BROWN
Aberdeen, South Dakota                Attorney for defendant
                                       and appellee.

* * * *

ARGUED NOVEMBER 15, 2011

OPINION FILED **12/28/11**

#25950

GILBERTSON, Chief Justice

[¶1.] Maternal grandparents petitioned for permanent guardianship of a minor Indian child in Tribal Court. After receiving the guardianship, they sought to have it recognized in a South Dakota Circuit Court which had been exercising jurisdiction over the child and his deceased mother since 2007. The child's biological father challenged the jurisdiction of the Tribal Court. The Circuit Court concluded that the Tribal Court did not have jurisdiction. Consequently, the Circuit Court denied the grandparents' motion to recognize the Tribal Court order. Grandparents appeal. We affirm.

## FACTS

[¶2.] E.M.A. was born to Natasha Merrill and Adam Altman in December 2001. Natasha and Adam separated in 2004. In 2007 a state court action was commenced to determine custody of E.M.A. Natasha and Adam shared legal custody of E.M.A., though Natasha had primary physical custody. The record does not indicate whether the original award of custody by the Circuit Court was by a stipulation confirmed by a court decree or by decree after a contested trial.

[¶3.] E.M.A. is an enrolled member of the Sisseton-Wahpeton Oyate Tribe, as was Natasha. Merrills concede that Adam is not Native American. On November 16, 2007, the Circuit Court entered a custody order that restricted Natasha from relocating her residency with E.M.A. to certain areas outside of South

-1-

Dakota without the Circuit Court's consent.[1]  A December 2008 Circuit Court order required Natasha to follow relocation statutes as set forth in SDCL 25-4A-17 to -19.[2]  In August 2009, Natasha unsuccessfully requested that the Circuit Court allow relocation of E.M.A. and herself to the Mille Lacs Band of Ojibwe Reservation (Mille Lacs Reservation) in Minnesota.

[¶4.]        On April 6, 2010, Natasha died in a car accident.  Adam was not immediately informed of Natasha's death.  At the time of the accident, E.M.A. was with Natasha's parents, Celestine and Bahwashung Merrill, who lived on the Mille Lacs Reservation.  Bahwashung is an enrolled member of the Mille Lacs Band of Ojibwe Indian Tribe and Celestine is an enrolled member of the Sisseton-Wahpeton Oyate Tribe.

[¶5.]        The Merrills petitioned the Mille Lacs Band of Ojibwe Tribal Court (Tribal Court) for guardianship of E.M.A. on April 12, 2010.  This petition, which was the first time Adam heard of Natasha's death, was faxed to Adam's business office at 11:30 a.m. on April 12, 2010.  The Notice of Hearing informed Adam the hearing was set for 4:00 p.m. that same day.  Adam made a telephonic special appearance to challenge the jurisdiction of the Tribal Court.  On April 14, 2010, the Tribal Court granted temporary custody of E.M.A. to the Merrills.

---

1.    The order provided: "Natasha shall not remove the children from within 20 miles of the 494/694 loop."  We presume this is a reference to the beltway around the metropolitan area of Minneapolis/St. Paul, Minnesota.

2.    Specifically, the order provided: "Concerning the issue of any future re-location of Natasha's place of residence, the parties shall simply follow the requirements of SDCL 25-4A-17 through 25-4A-19, without further restriction or presumption."

[¶6.]      The Merrills also contacted Natasha's South Dakota attorney, who scheduled an emergency hearing in South Dakota Circuit Court to address the issue of guardianship.  On April 14, 2010, the Circuit Court held an emergency hearing. The Court indicated that the grandparents could petition to intervene in the custody action between Natasha and Adam.  E.M.A. was returned to Adam on April 14.

[¶7.]      On April 26, 2010, both the Tribal Court and Circuit Court issued orders.  The Tribal Court order directed Adam to return E.M.A. to the Merrills, consistent with the Tribal Court's earlier order.  The Tribal Court further ordered that the Merrills have temporary guardianship over E.M.A. until the end of the school year, when E.M.A. would be returned to Adam pending further legal action. As a result of the emergency hearing, the Circuit Court, apparently relying on *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000), ordered that Adam was entitled to custody of E.M.A. "subject to further Order of the Court in this matter."

[¶8.]      On May 11, 2010, the Tribal Court found Adam in contempt of court for removing E.M.A. from the reservation on April 14 in violation of the Tribal Court's order.  The Tribal Court also found that Adam had refused to abide subsequent orders directing him to return E.M.A. to the Merrills.

[¶9.] The Tribal Court granted an Order of Continuance on June 1, 2010 in the matter of the custody of Natasha's children.[3] In the order, the Tribal Court stated it was concerned about the petition for guardianship because the Merrills had previously indicated it was only temporary.

[¶10.] The Tribal Court held a hearing on August 27, 2010. Adam was not present at the hearing.[4] On September 7, 2010, the Tribal Court entered findings of fact, conclusions of law, and an order regarding E.M.A.'s guardianship. The Tribal Court found it had exclusive jurisdiction over the guardianship of E.M.A. and awarded permanent guardianship to the Merrills.

[¶11.] Instead of intervening in the state custody action, the Merrills filed a Motion to Recognize Tribal Court Order on September 13, 2010 with the Circuit Court. The Merrills filed an Amended Motion to Recognize Tribal Court Order on October 14, 2010. The Circuit Court held a hearing on the motion on October 20, 2010. A memorandum decision was issued on December 13, 2010. The Circuit Court concluded that the Tribal Court did not have jurisdiction to determine E.M.A.'s guardianship. It reasoned that if E.M.A. was residing on a reservation during Natasha's life, Natasha was in violation of the Circuit Court's previous relocation orders issued in 2007 and 2008. The Court found that E.M.A.'s residence, for purposes of the Indian Child Welfare Act (ICWA), was not established by the six days he resided on the Mille Lacs Reservation after Natasha's death. Citing *Troxel*,

---

3. E.M.A. has a half-brother who is also Natasha's son. He is not involved in this case.

4. It is not clear from the record whether Adam was notified of this hearing.

530 U.S. at 65, 120 S. Ct. at 2060, for the principle that parents have an interest in the care, custody, and control of their children, the Circuit Court denied the motion to recognize the Tribal Court order. An order issued by the Circuit Court based upon findings of fact and conclusions of law was filed on February 28, 2011.

[¶12.]     On appeal, the issue is whether the Circuit Court erred in determining that the Tribal Court did not have jurisdiction under ICWA over E.M.A.'s guardianship.

## STANDARD OF REVIEW

[¶13.]     An issue regarding jurisdiction is a question of law, reviewed de novo. *Martin v. Am. Colloid Co.*, 2011 S.D. 57, ¶ 8, 804 N.W.2d 65, 67.

## ANALYSIS

[¶14.]     All parties agree that jurisdiction of this case involves an examination of ICWA.[5] ICWA, 25 U.S.C. § 1911(a), provides: "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law."[6] Jurisdiction under ICWA is established as of the date the action is filed. *People ex*

---

5.     On appeal we only address whether the Circuit Court erred in concluding that the Tribal Court did not have jurisdiction to issue an order regarding E.M.A. Although the Circuit Court relied, in part, on *Troxel* in awarding custody to Adam, we need not address any arguments regarding rights of a natural parent or grandparent guardianship.

6.     Neither party asserts that jurisdiction under any other section of ICWA is applicable in this case. Consequently, we only address the issue of exclusive jurisdiction under 25 U.S.C. § 1911(a).

*rel. S.G.V.E.*, 2001 S.D. 105, ¶ 18, 634 N.W.2d 88, 92. The party asserting applicability of ICWA has the burden to prove that the child meets the criteria under ICWA. *People ex rel. D.T.*, 2003 S.D. 88, ¶ 16, 667 N.W.2d 694, 699.

[¶15.] As has been noted, both E.M.A. and Natasha were enrolled members of the Sisseton-Wahpeton Oyate Tribe. No proceedings have been held in the Sisseton-Wahpeton Tribal Court, nor has that Tribe attempted to intervene to assert jurisdiction. In *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 37, 109 S. Ct. 1597, 1602, 104 L. Ed. 2d 29 (1989), there are references to the cultural relationship between the Indian child, the child's parents, and the child's tribe of enrollment. However, the language of 25 U.S.C. § 1911(a) does not rely upon "enrollment" as its standard for applicability of ICWA. Instead it uses the terms "resides or domiciled." Thus, the enrollment status of E.M.A. and Natasha is not dispositive.

[¶16.] This case can be resolved by determining whether E.M.A. was residing or domiciled on the Mille Lacs Reservation. Because the Merrills do not assert that E.M.A. was domiciled on the Mille Lacs Reservation, our review is limited to examining whether E.M.A. resided on the Mille Lacs Reservation. ICWA does not define "resides" or "residence."

[¶17.] In *Holyfield*, 490 U.S. at 42, 109 S. Ct. at 1605, the issue was whether the children were domiciled on the reservation for purposes of exclusive jurisdiction under 25 U.S.C. § 1911(a). The framework the Supreme Court established for analyzing domicile is instructive for analyzing residence as well. The Court concluded that Congress intended a uniform federal law of domicile for ICWA. *Id.*

490 U.S. at 47, 109 S. Ct. at 1607. The Court also stated that it was "helpful to borrow established common-law principles of domicile to the extent that they are not inconsistent with the objectives of the congressional scheme." *Id.* 490 U.S. at 47-48, 109 S. Ct. at 1608. Consequently, adopting such a rationale, we look to common law to determine whether E.M.A. resided on the Mille Lacs Reservation.

[¶18.] "Residence and domicile are not interchangeable concepts." *State ex rel. Jealous of Him v. Mills*, 2001 S.D. 65, ¶ 10, 627 N.W.2d 790, 793. "Domicile is established by physical presence in a place combined with intent to remain there." *In re J.D.M.C.*, 2007 S.D. 97, ¶ 16, 739 N.W.2d 796, 802. In *People ex rel. G.R.F.*, 1997 S.D. 112, ¶ 16, 569 N.W.2d 29, 33, we noted that the *Holyfield* Court recognized that "one can reside in one place but be domiciled in another." (quoting *Holyfield*, 490 U.S. at 48, 109 S. Ct. at 1608). For a common-law definition of domicile, we have in the past also turned to Black's Law Dictionary.[7] *Id.* 1997 S.D. 112, ¶ 16 n.4, 569 N.W.2d at 33 n.4. Black's states that "'residence' usually just means bodily presence as an inhabitant in a given place." Black's Law Dictionary 1335 (8th ed. 2004).

[¶19.] Although not binding, this Court has previously found helpful the Department of the Interior Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584-67595 (Nov. 26, 1979) (BIA

---

7. While not addressed by the parties, there is authority that when parents are not married and one parent dies, the child acquires the domicile of the surviving parent. *See, e.g.*, *B.R.T. v. Exec. Dir. of the Soc. Serv. Bd. of N.D.*, 391 N.W.2d 594, 598 (N.D. 1986); *Searle v. Searle*, 38 P.3d 307, 317-18 (Utah App. 2001); Restatement (Second) Conflict of Laws § 22, cmt. d.

Guidelines), to assist in interpreting provisions in ICWA. *In re A.L.*, 442 N.W.2d

233, 236 (S.D. 1989). The Introduction to the BIA Guidelines states that,

> A number of commenters recommended that special definitions of residence and domicile be included in the guidelines. Such definitions were not included because these terms are well defined under existing state law. There is no indication that these state law definitions tend to undermine in any way the purposes of the Act. Recommending special definitions for the purpose of this Act alone would simply provide unnecessary complication in the law.

Furthermore, when discussing emergency removal of an Indian Child, the

Commentary to section B.7 of the BIA Guidelines says that "[s]ince jurisdiction

under the Act is based on domicile and residence rather than simple physical

presence, there may be instances in which action must be taken with respect to a

child who is physically located off a reservation but is subject to exclusive tribal

jurisdiction." This commentary suggests that residence requires more than "simple

physical presence." We agree. Physical presence in a place for a few days does not

make a person a resident.

[¶20.]     If E.M.A. and Natasha were living on the Mille Lacs Reservation, this

was in conflict with the Circuit Court's August 2009 order denying such a request.[8]

No later than 2007, Natasha had submitted to the jurisdiction of the Circuit Court

of South Dakota to determine custody of E.M.A. She did not appeal the Circuit

Court's 2009 decision. The Merrills do not directly challenge the Circuit Court

order limiting Natasha's place of residence. However, we note that SDCL 25-5-13

---

8.     The parties do not dispute that Natasha was required by law to notify Adam before changing E.M.A.'s residence under SDCL 25-4A-17 to -19.

provides: "A parent entitled to the custody of a child has the right to change his residence, *subject to the power of the circuit court to restrain a removal* which would prejudice the rights or welfare of the child." (Emphasis added.) The Circuit Court had acquired jurisdiction in 2007. The Circuit Court's subsequent orders determining what was in the best interests of E.M.A. to control the location of his residence are not before us for review. What instead we must decide is whether the Circuit Court was bound by § 1911(a) to recognize the Tribal Court's Guardianship Order of September 7, 2010.

[¶21.] A court order that prohibits a person from living or moving to a certain place applies equally to domicile and residence. We therefore find cases analyzing whether domicile can be established in violation of a court order instructive in this residence case. In the case of *Chamblee v. Rose*, 249 S.W.2d 775 (Ky. 1952), the mother deliberately violated two valid custody decrees ordering her not to remove the children from the state. *Id.* at 776. The Kentucky appellate court stated that "her efforts cannot be recognized as having transposed the domicile of these children, for jurisdictional purposes . . . ." *Id.* at 778. *See also State ex rel. Marthens v. Superior Ct. for Jefferson Cnty.*, 169 P.2d 626 (Wash. 1946) (recognizing that children were not legally domiciled in Washington because mother brought them there in violation of a California court order). We agree with those courts that such forum-shopping cannot be condoned as it is incompatible with existing jurisdiction.

[¶22.] The Circuit Court ordered: "Neither Natasha nor her parents may circumvent a previous order of this Court to establish jurisdiction in another court."

We agree. As a practical matter, if this Court were to recognize Merrills' petition and thereby allow children's residences to be established in other jurisdictions in violation of previously entered South Dakota circuit court orders, it would nullify the effect of issuing valid circuit court orders that must legally be obeyed unless vacated, amended, or overturned. Furthermore, such recognition would encourage parents to engage in forum-shopping after receiving a court determination not to their liking, in hopes of obtaining, possibly, a more favorable court order elsewhere.

## CONCLUSION

[¶23.] E.M.A. did not "reside" on the reservation. The Circuit Court did not err in finding that the Tribal Court did not have exclusive jurisdiction over the Merrills' guardianship petition. Consequently, the Circuit Court was correct in denying Merrills' petition to recognize the Tribal Court order. We affirm.[9]

[¶24.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.

---

9. Altman's petition for appellate attorneys' fees is denied.