#28070, #28084-r-LSW
**2017 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

DWIGHT OXTON and
MARY JO OXTON,                                    Plaintiffs and Appellants,

v.

EUGENE RUDLAND, CATHY RUDLAND,        Defendants and Appellees,

and

TERRANCE J. WOJTANOWICZ,                Defendant.

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE HEIDI LINNGREN
Judge
* * * *

SHANE M. PULLMAN
PHILLIP R. STILES of
Costello Porter Hill Heisterkamp
  Bushnell & Carpenter, LLP
Rapid City, South Dakota              Attorneys for plaintiffs and
                                      appellants.


MICHAEL C. LOOS of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota

and

GREGORY G. STROMMEN of
Banks, Kappelman & Strommen, Prof. LLC
Rapid City, South Dakota              Attorneys for defendants and
                                      appellees.
                    * * * *

                                      CONSIDERED ON BRIEFS
                                      MAY 30, 2017
                                      OPINION FILED **6/14/17**

WILBUR, Retired Justice

[¶1.]      The purchasers of a home brought suit against the sellers for fraud and failure to disclose defects.  The circuit court dismissed the purchasers' claims on summary judgment.  The purchasers appeal.  We reverse and remand.

## Background

[¶2.]      In February 2013, Dwight Oxton executed a purchase agreement for a home located at 1017 Gladys Street in Rapid City, South Dakota owned by Eugene and Cathy Rudland.  The Rudlands had purchased it for $165,000 from Todd and Kari Wang just a couple months before—in December 2012 and listed it for sale for $262,500.  When the Rudlands listed the home for sale, they prepared a property disclosure statement.  On the disclosure statement, they indicated that they had installed a "new sidewalk slab" and repaired "slight sheetrock cracking."  In a handwritten statement in the section for additional comments, the Rudlands noted that they had not lived in the home and were "selling the home as is."  The Oxtons received the property disclosure statement and made an offer to purchase the home for $245,000.  They made their offer contingent upon the sale of their home in Florida and set a closing for March 29, 2013.  They also made their offer contingent on obtaining a property inspection, which they obtained.

[¶3.]      Real estate agent Terrance J. Wojtanowicz acted as a limited agent for Dwight in this transaction.  The Oxtons' home in Florida did not sell by March 29, 2013, but they still wanted to purchase the home.  Wojtanowicz advised the parties to enter into a contract for deed.

[¶4.]    On April 12, 2013, Dwight Oxton and the Rudlands entered into a contract for deed for the same property to be purchased at the same price. The contract for deed indicated that Dwight was purchasing the home "as is" and that the parties agreed that neither party made any representations or warranties except those made in the contract for deed. The contract reiterated: "Buyer further acknowledges that he has made an inspection of the property and is fully aware of the environmental condition of the property and further confirms it [sic] is buying the property 'as-is' with no representations or warranties from Sellers regarding the environmental condition of the property." The agreement contained an integration clause, indicating that it constituted the entire agreement between the parties.

[¶5.]    Within a year after moving into the home, the Oxtons began to notice new cracks in the sheetrock throughout the home. The Oxtons later learned from the Wangs that the home had been the subject of a prior lawsuit when the Wangs owned it. The Wangs told the Oxtons that the home suffered significant damage because of major settling and the presence of expansive soil. The Oxtons also learned that Wojtanwicz had acted as an expert for the Wangs in that lawsuit. In his report, Wojtanwicz opined that the home's value if sold "as is" would be between $150,000 and $155,000 because of the presence of expansive soil. The Wangs told the Oxtons that they sold the home after the lawsuit settled. The Oxtons learned that Wojtanwicz had acted as the limited agent in the sale of the home from the Wangs to the Rudlands. The Oxtons also learned that the Rudlands had received a property disclosure statement, which indicated that the home had "major settling,"

that the "house sold as is," that expansive soils existed, and that the "[h]ome was part of a lawsuit do [sic] to settling and is being sold as is[.]"

[¶6.]        In July 2014, the Oxtons brought suit against the Rudlands and Wojtanowicz. This appeal concerns only the suit against the Rudlands. The Oxtons claimed that the Rudlands violated SDCL 43-4-38 when they negligently and intentionally failed to disclose defects. They also asserted that the Rudlands fraudulently misrepresented the value of the home by selling it "as is" and fraudulently deceived Dwight by suppressing facts known to the Rudlands related to the property. The Oxtons sought compensatory and punitive damages.

[¶7.]        The Rudlands answered and asserted that any problems with the home were caused by the Oxtons' undertaking of significant landscaping, which they claimed compromised the ability to keep water away from the home's walls and away from the soil beneath the home. The Rudlands also asserted multiple affirmative defenses. The Rudlands counterclaimed against Dwight Oxton for breach of contract based on the alterations he completed to the property, including the landscaping project, and for Dwight's failure to maintain property and liability insurance coverage and name the Rudlands as additional insureds. They claimed that they gave Dwight notice of his defaults under the contract and that Dwight failed to cure the defaults. Because of Dwight's breaches and failures to cure, the Rudlands requested that the circuit court order the Oxtons to vacate the property and award the Rudlands damages, costs, and attorney's fees.

[¶8.]        The Rudlands moved for partial summary judgment. They argued that the unambiguous language of the contract for deed foreclosed the Oxtons' claim that

the Rudlands violated SDCL 43-4-38 and the claims that the Rudlands misrepresented any facts or fraudulently concealed any facts. According to the Rudlands, Dwight agreed to buy the home "as is" and agreed that the Rudlands made no representations or warranties other than those made in the contract for deed. In response, the Oxtons asked the circuit court to consider parol evidence.

[¶9.]     After a hearing, the circuit court granted the Rudlands' motion for partial summary judgment. The court found the language of the contract for deed unambiguous and refused to consider parol evidence. Specifically, the court held that "[t]he enforceable, fully-integrated and unambiguous contract disposes of all causes of action against the Rudlands." In regard to the Oxtons' claims of fraud, the court refused to consider parol evidence because the purchase agreement and property disclosure statement had "been expressly supplanted by the terms of the contract for deed when Oxtons could not close on the original transaction" and under the contract for deed, the Oxtons purchased the property "as is." The court further concluded that there was "no factual support for the claim that Dwight Oxton was fraudulently induced to enter into the contract for deed." In the court's view, it would be a "twist of logic" to allow the Oxtons to use the property disclosure statement to support their fraud claim when the Oxtons agreed to buy the property "as is."

[¶10.]     In regard to the Oxtons' claims that the Rudlands negligently and intentionally failed to disclose defects as required by SDCL 43-4-38, the court found *Lucero v. Van Wie*, 1999 S.D. 109, 598 N.W.2d 893 controlling. In that case, this Court held that parties can waive the requirement of SDCL 43-4-38. Relying on

*Lucero*, the circuit court held that the contract for deed provided that necessary waiver.

[¶11.]     The Oxtons appeal, asserting the following issues:

1. Whether the circuit court erred when it concluded that the parol evidence rule precluded consideration of the property disclosure statement when the Oxtons alleged fraud.

2. Whether the circuit court erred when it concluded that the "as is" clause barred the Oxtons' claim that they relied on the Rudlands' misrepresentations.

3. Whether material issues of fact exist precluding summary judgment on the Oxtons' claim that the Rudlands failed to complete the property disclosure statement in good faith as required by SDCL 43-4-38.

By notice of review, the Rudlands claim the circuit court abused its discretion when it refused to award them attorney's fees.

## Analysis

### 1. Parol Evidence and the "As Is" Clause

[¶12.]     We combine the Oxtons' first two issues because whether the court erred when it applied the parol evidence rule is intertwined with the question whether the court erred when it granted the Rudlands summary judgment on the Oxtons' claims of fraudulent misrepresentation and fraudulent concealment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). We give no deference to the circuit court's decision to grant summary judgment—our review is de novo. *Highmark Fed. Credit Union v. Hunter*, 2012 S.D. 37, ¶ 7, 814 N.W.2d 413, 415.

Similarly, we review de novo the circuit court's decision to exclude parol evidence. *Poeppel v. Lester*, 2013 S.D. 17, ¶ 19, 827 N.W.2d 580, 584.

[¶13.]     The Oxtons do not dispute that the contract for deed is unambiguous and fully integrated. They claim, however, that the parol evidence rule has absolutely no application when a party alleges fraud. They further assert that the "as is" clause and disclaimer of representations or warranties in the contract for deed cannot shield the Rudlands from liability for fraud.

[¶14.]     Ordinarily, the parol evidence rule bars the admission of parol or extrinsic evidence to vary the terms of a written contract. SDCL 53-8-5; *Auto-Owners Ins. Co. v. Hansen Hous., Inc.*, 2000 S.D. 13, ¶ 13, 604 N.W.2d 504, 510. But "[i]t must be understood that the parol evidence rule 'is in no sense a rule of evidence[.]'" *Auot-Owners*, 2000 S.D. 13, ¶ 14, 604 N.W.2d at 510 (quoting 9 J. Wigmore, Evidence § 2400, at 4 (Chadbourn rev ed 1981)). It is "a rule of substantive law." *Id.* This Court has consistently held that "the parol evidence rule does not apply in cases of fraud in the inducement" despite that the contract is clear, unambiguous, and fully integrated. *Poeppel*, 2013 S.D. 17, ¶¶ 19, 21, 827 N.W.2d at 584-85; *Engels v. Ranger Bar, Inc.*, 2000 S.D. 1, ¶ 15, 604 N.W.2d 241, 245; *Holmes v. Couturier*, 452 N.W.2d 135, 137 (S.D. 1990); *Sabbagh v. Prof'l & Bus. Men's Life Ins. Co.*, 79 S.D. 615, 629, 116 N.W.2d 513, 520 (1962). Nor can parties shield themselves from liability for fraud by using a disclaimer, a stipulation, or a statement that no representations have been made in the contract. *Poeppel*, 2013 S.D. 17, ¶¶ 22-23, 827 N.W.2d at 585-86. To conclude otherwise would mean "contracting parties could insulate themselves from their own fraud." *Id.* ¶ 21.

[¶15.] Here, the Oxtons seek to use parol evidence to prove fraudulent concealment and fraudulent misrepresentation. These causes of action are governed by SDCL 20-10-2. To prove fraudulent concealment, the Oxtons must show, among other things: "(1) the suppression of a fact by one who is bound to disclose it, or (2) the suppression of a fact by one who gives information of other facts which are likely to mislead for want of communication of that fact." *See Milligan v. Waldo*, 2001 S.D. 2, ¶ 10, 620 N.W.2d 377, 380. On their claim of fraudulent misrepresentation, the Oxtons must show, in part, that (1) the Rudlands made a representation of fact that was untrue, (2) that they knew it was untrue or made the representation recklessly, and (3) that they made the representation with the intent to deceive Dwight or with the purpose of inducing him to act upon it. *See id.*

[¶16.] In support of these claims, the Oxtons presented evidence that the Rudlands purchased the home for $165,000 just months before selling it for $245,000. When the Rudlands purchased the home, they were informed via the Wangs' property disclosure statement that the home was the subject of a lawsuit, that it had experienced "major settling," and that expansive soils existed. Despite this information, the Rudlands completed a property disclosure statement that did not inform Dwight of the same material facts. In fact, although the Wangs checked the box "yes" in answer to the question on the presence of expansive soils, the Rudlands checked the box "no" for the same question.

[¶17.] The Rudlands, however, respond that the disclosure statement is irrelevant because Dwight received it in the transaction governed by the *purchase*

*agreement*, which transaction terminated when the Oxtons did not sell their home in Florida. They also claim that the Oxtons "greatly exaggerate" their claims of being defrauded. They point to Dwight's deposition testimony where he testified that he was aware he was purchasing the home "as is," that he knew the contract for deed said that the Rudlands were making no representations or warranties, and that he admitted they had an opportunity to and did obtain a home inspection.

[¶18.] "A provision in a contract that the buyer takes the property 'as is' does not confer upon the seller a general immunity from liability for fraud." *Holmes*, 452 N.W.2d at 137; *accord Engles*, 2000 S.D. 1, ¶ 15, 604 N.W.2d at 245. More importantly, "reliance in a fraudulent inducement case is a question of fact." *Poeppel*, 2013 S.D. 17, ¶ 28, 827 N.W.2d at 587. Questions of fact on material issues such as fraud are not appropriate for summary judgment. Indeed, "[t]hough the purpose of [summary judgment] is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists." *Bourk v. Iseman Mobile Homes*, 316 N.W.2d 343, 343-44 (S.D. 1982). On summary judgment, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 22, 588 N.W.2d 897, 902 (quoting *Wildeboer v. S.D. Junior Chamber of Comm.*, 1997 S.D. 33, ¶ 9, 561 N.W.2d 666, 668).

[¶19.] From our review of the record, the circuit court erroneously concluded that there was "no factual support for the claim that Dwight Oxton was fraudulently induced to enter into the contract for deed." Rather, the Oxtons

presented specific facts to support their claims that the Rudlands fraudulently concealed and misrepresented facts to induce Dwight to purchase the home and that he relied on the Rudlands' representations when he agreed to purchase the home under the contract for deed. Therefore, the court erred when it applied the parol evidence rule to exclude the Oxtons' extrinsic evidence. The court also erred when it granted the Rudlands summary judgment on the Oxtons' fraud claims.

## 2. Disclosure Statement as Required by SDCL 43-4-38

[¶20.] The Oxtons next claim that the circuit court erred when it granted summary judgment on their claim that the Rudlands violated SDCL 43-4-38. They assert that they did not waive their rights under SDCL 43-4-38 by entering into the contract for deed to purchase the home "as is." They also claim that the circumstances are distinguishable from *Lucero*, 1999 S.D. 109, 598 N.W.2d 893 because, unlike in *Lucero*, the Rudlands gave the Oxtons a disclosure statement. 1999 S.D. 109, 598 N.W.2d 893.

[¶21.] Although *Lucero* involved a contract for deed and the sale of a home "as is," we did not declare that the use of "as is" language or general disclaimers against warranties or representations constitutes waiver of the disclosure requirements under SDCL 43-4-38 as a matter of law. *Id.* ¶ 13. We interpreted SDCL chapter 43-4 to allow for waiver and then held that waiver occurred in *Lucero* on "the facts" of the case. *Id.* ¶ 17.

[¶22.] Here, however, the facts do not support that the parties waived the disclosure requirements. Dwight agreed to purchase the home "as is" on a contract for deed, but neither the circumstances nor the contract language support that the

intent was to waive disclosure requirements. In fact, the Rudlands completed and delivered a property disclosure statement to Dwight. "To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right." *Norwest Bank South Dakota, N.A. v. Venners*, 440 N.W.2d 774, 775 (S.D. 1989) (quoting *Subsurfco, Inc. v. B-Y Water Dist.*, 337 N.W.2d 448, 456 (S.D. 1983)); *accord Wehrkamp v. Wehrkamp*, 2009 S.D. 84, ¶ 9, 773 N.W.2d 212, 215. Because no clear, unequivocal, or decisive act or acts exist on this record, we reverse the circuit court's summary disposition of the Oxtons' claim that the Rudlands violated SDCL 43-4-38.

### 3. Notice of Review—Attorney's Fees

[¶23.] The Rudlands assert that the circuit court abused its discretion when it denied their motion for an award of attorney's fees under SDCL 43-4-42. That statute allows for an award of attorney's fees "to the prevailing party" in a suit under this section. *Id.* Because we reverse the circuit court's decision summarily disposing of the Oxtons' claim under SDCL chapter 43-4, we need not address this issue.

[¶24.] Reversed and remanded.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.