#28598, #28599, #28609-r-MES
**2020 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FERN JOHNSON,                                        Plaintiff and Appellee,

    v.

UNITED PARCEL SERVICE, INC.,
and LIBERTY MUTUAL FIRE
INSURANCE CO.,                                      Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JANE WIPF PFEIFLE
Judge

\* \* \* \*

DAVID S. BARARI
G. VERNE GOODSELL
TERENCE R. QUINN of
Goodsell Quinn, LLP
Rapid City, South Dakota

ROBERT S. PECK of
Center for Constitutional Litigation, P.C.
Washington, D.C.

WM. JASON GROVES
Rapid City, South Dakota                        Attorney for plaintiff and
                                                                appellee.

\* \* \* \*

ARGUED
FEBRUARY 21, 2019
OPINION FILED **06/24/20**

JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise
    Sauck & Hieb, LLP
Aberdeen, South Dakota

THOMAS D. WARREN of
Baker & Hostetler, LLP
Cleveland, Ohio

Attorneys for defendants and appellants.

SALTER, Justice

[¶1.] Fern Johnson sued her former employer, United Parcel Service (UPS), and its workers' compensation carrier, Liberty Mutual Fire Insurance (collectively Appellants), alleging bad faith and conversion based on their denial of previously ordered workers' compensation medical benefits. A jury returned a verdict for Johnson, awarding her general and punitive damages. On appeal, the Appellants claim the circuit court erred when it concluded before trial that their legal obligation to pay Johnson's benefits was not fairly debatable and that no reasonable basis to deny Johnson's benefits existed. The Appellants also claim that the court abused its discretion by excluding specific evidence of their attorney's advice to terminate benefits and by instructing the jury that it could not consider their reliance upon the advice of counsel to determine whether the elements of bad faith were met.

[¶2.] We agree that the Appellants had no reasonable basis to terminate Johnson's medical benefits because their legal obligation to pay was not fairly debatable. However, we conclude the circuit court erred when it determined this lack of a reasonable basis necessarily impacted the jury's consideration of the separate bad faith element concerning the Appellants' knowledge. This error manifested itself in the court's evidentiary rulings restricting certain evidence and in its jury instructions, which effectively ended the jury's consideration of the knowledge element. Therefore, we reverse and remand for a new trial.

## Background

[¶3.] Fern Johnson worked at UPS from 1973 to 1982 and again from 1988 to 1997. In November 1995, Johnson noticed pain in her right groin area, especially with lifting. On January 4, 1996, Johnson experienced a sharp pain in her groin area at the end of her shift. She saw her gynecologist that day for what she believed was pain from endometriosis, a previously diagnosed medical condition. Following a laparoscopy two weeks later, Johnson learned she had a hernia and reported it to her employer the next day. Johnson underwent a combined hysterectomy and hernia repair surgery the following month. She returned to work on March 19, but experienced increased groin pain that kept her off work during a period of time that spring. Johnson subsequently quit working at UPS on December 9, 1997, due to groin and back pain.

[¶4.] Johnson initially filed for workers' compensation benefits related to, as relevant here, her hernia surgery and groin pain. On August 4, 2002, the Department of Labor (DOL or Department) determined that Johnson's hernia was causally related to her employment at UPS, but her groin pain was not.

[¶5.] Johnson appealed to the circuit court, which reversed the Department's decision that Johnson's groin pain was not compensable on March 9, 2004. The court remanded the case to the Department for further administrative proceedings in an April 15, 2005 order.

[¶6.] On remand, the administrative law judge (ALJ) issued findings of facts and conclusions of law, which stated in relevant part:

> Pursuant to the Circuit Court's ruling, Claimant has
> demonstrated by a preponderance of evidence that her groin

> pain is causally related to her employment with Employer . . . .
> *Claimant is entitled . . . to necessary, suitable, and proper*
> *medical expenses causally related to her work-related groin*
> *condition.*

(Emphasis added.) *See* SDCL 62-4-1 ("The employer shall provide *necessary* first aid, medical, surgical, and hospital services, or other *suitable and proper* care including medical and surgical supplies, apparatus, artificial members, and body aids during the disability or treatment of an employee within the provisions of this title.") (Emphasis added.)

[¶7.] Following Johnson's pro se petition for review, the DOL Secretary affirmed the ALJ's findings of facts and conclusions of law in a March 14, 2006 order (2006 DOL Order). The Appellants did not appeal this order[1] and paid for Johnson's compensable medical expenses until the spring of 2010.

[¶8.] At that point, the Appellants asked their attorney, Eric Schulte, for advice regarding their ongoing obligation to pay Johnson's medical benefits. The Appellants assert that the claims adjuster assigned to Johnson's case was not familiar with South Dakota workers' compensation law and sought Schulte's advice because of his experience and excellent reputation. Schulte recommended scheduling an independent medical examination (IME) for Johnson with a neurologist pursuant to SDCL 62-7-1, which generally requires claimants to

---

1. Though it appears true that the Appellants did not appeal the 2006 DOL Order, which is based on the circuit court's remand instructions, there are references in the record suggesting they sought review of the circuit court's April 15, 2005 order finding Johnson's groin condition compensable. However, the information relating to these efforts is incomplete, and we will treat the 2006 DOL Order as a final administrative order.

undergo compulsory IME's to "determin[e] the nature, extent and probable duration of the injury . . . ." *Id.*

[¶9.]    The Appellants hired Dr. Bruce Norback, a board-certified neurologist, to conduct Johnson's IME.  Dr. Norback opined that what had been described as Johnson's "neuroma condition" relating to her groin pain did not remain a major contributing cause of her need for continuing medical treatment.[2]  Indeed, Dr. Norback believed "a definite diagnosis of a neuroma has never been made."  He also thought that Johnson's employment at UPS was no longer a major contributing cause of her need for medical treatment related to her groin pain because she had not worked for UPS for almost 13 years, but still experienced worsening symptoms.

[¶10.]    On August 9, 2010, the Appellants, through Schulte, wrote Johnson a letter stating that they were terminating payment of all present and future medical expenses related to her groin pain based upon Dr. Norback's IME findings.  After the Appellants denied Johnson's requests for reconsideration, she filed a petition for hearing with the Department.  Following the hearing, the Department issued findings of facts and conclusions of law, which included the finding that the Appellants had "denied all further workers' compensation benefits . . . based on Dr. Norback's opinion regarding the same issues that were litigated by the parties ten years earlier."  The Department also concluded that the "Employer/Insurer did not make a request to the Department for a review of the medical services or payments made for Claimant . . . pursuant to SDCL 62-7-33."  *See* SDCL 62-7-33 (describing

---

2.    At the time, Johnson's medical treatment included radiofrequency ablation, use of a transcutaneous electrical nerve stimulation (TENS) unit, and pool therapy.

the procedure for an employer or employee to ask the Department to determine whether a changed condition warrants a modification of medical or disability payments).

[¶11.]    The Department further concluded that the causal relationship of Johnson's work-related activities and her groin pain had already been established and that the "Employer/Insurer do not have the authority to approve or deny medical treatment . . . without proper notice to the Department for a review pursuant to SDCL 62-7-33." After finding Johnson's current medical treatments suitable based on her treating doctor's testimony, the Department reinstated Johnson's medical benefits on January 20, 2012. The Appellants then reimbursed Johnson for approximately $13,000 in medical expenses that she had incurred following their decision to terminate benefits.

[¶12.]    On appeal to the circuit court, the Appellants argued that notwithstanding the 2006 DOL Order, the provisions of SDCL 62-7-1 and SDCL 62-1-1(7) allowed them to review Johnson's medical condition and unilaterally determine if her work injury "remains a major contributing cause of her . . . need for treatment." The circuit court disagreed and affirmed the Department's determination that SDCL 62-7-33 was "the proper mechanism" to review the 2006 DOL Order. In its decision, the circuit court stated that "[a]fter an award is final, whether the injury is a major contributing cause becomes an issue only after the employer/insurer establishes a change in condition." The circuit court concluded that an employer or insurer may not "decide to unilaterally ignore the Department's decision." The Appellants did not appeal the circuit court's ruling.

[¶13.]     On May 22, 2014, Johnson commenced this action against the Appellants alleging bad faith, barratry, conversion, abuse of process, and requesting punitive damages. In its amended answer, the Appellants raised several affirmative defenses, including claims that the law was fairly debatable at the time of its 2010 denial and that it had relied on the advice of counsel.

[¶14.]     The parties sought to narrow or eliminate various claims and defenses through summary judgment. The circuit court granted the Appellants' motion for summary judgment on the barratry and abuse of process claims, but the court denied the motion as to the conversion claim, finding the evidence could show Johnson met the elements to prevail on the claim.[3]

[¶15.]     The Appellants' affirmative defenses relating to Johnson's bad faith claim were also the subjects of summary judgment litigation. In her summary judgment motion seeking to preempt the Appellants' defense that they relied upon the advice of counsel, Johnson argued that the Appellants could not reasonably rely upon legal advice that contradicted an existing order to pay medical benefits. With regard to its fairly debatable defense, the Appellants claimed that at the time they terminated Johnson's benefits, utilizing the IME process to disregard orders requiring payment of workers' compensation benefits was an accepted practice and, at a minimum, rendered their obligation to continue paying benefits fairly debatable. The Appellants acknowledged that their original legal position was foreclosed, but in their view, only by virtue of subsequent case law. They claimed

---

3. In her complaint, Johnson claimed that the Appellants committed conversion by unlawfully exercising dominion over "funds required to pay for her medical care and treatment."

these decisions resolved an unsettled question by definitively holding that SDCL 62-7-33 provides the exclusive means by which an employer could seek to modify a workers' compensation award. The circuit court initially denied both summary judgment motions, finding the existence of genuine issues of material fact.

[¶16.] However, the court later advised the parties that it was reconsidering its decision on the Appellants' fairly debatable defense. After receiving additional briefs, the court changed its earlier ruling and granted Johnson's motion for summary judgment, concluding that the law regarding the Appellants' duty to comply with the 2006 DOL Order was not fairly debatable. As a result, the court ordered that the Appellants were "prohibited from making arguments that they reasonably believed they could be allowed to stop workers compensation payments without seeking review from the Department of Labor under SDCL 62-7-33." The court reasoned that "[w]hen one arrives at SDCL 62-7-33, it is clear that, unless the parties have reached an agreement or the department has approved a change, there is no mechanism for an employer to unilaterally reduce benefits based upon an independent medical examination."

[¶17.] The circuit court also granted Johnson's corresponding motions in limine and excluded any evidence, testimony, or argument that the Appellants "misunderstood their legal duty under SDCL 62-7-33" or their "legal duty to provide medical benefits to [Johnson]." The Appellants were also prohibited from raising the argument "that SDCL 62-1-1(7) created a fairly debatable basis for denial of benefits" or from introducing evidence of their "intent" regarding the decision to terminate Johnson's medical benefits.

[¶18.]     Following the court's decision to grant Johnson's motion for summary judgment on the Appellants' fairly debatable defense, Johnson moved for reconsideration of her motion for summary judgment on their advice-of-counsel defense. The court granted Johnson's motion in part and denied it in part, instructing that the Appellants "can assert the *fact* of counsel's advice as a consideration . . . but they are prohibited from making an argument *that they reasonably believed* they had no legal duty in this case to follow SDCL 62-7-33 or to pay benefits at the time the decision was made." (Second emphasis added.) The ruling significantly curtailed the Appellants' evidence. Schulte's testimony regarding his understanding of then-existing law and his asserted good-faith intent was excluded, as was evidence that the Appellants believed they possessed a reasonable basis for terminating Johnson's medical benefits based on the particular aspects of Schulte's advice.

[¶19.]     During the five-day jury trial, the court consistently sustained Johnson's objections based on its pretrial fairly debatable and advice-of-counsel decisions. Several of the court's jury instructions also implemented these rulings, while others appear to have been drafted without regard to the rulings. For instance, the court instructed the jury on the two principal elements of bad faith—a lack of a reasonable basis for denial and knowledge or reckless disregard of the absence of a reasonable basis. The court also provided the jury with a statement of legal principles upon which to determine the existence of a reasonable basis, but then instructed the jury as a matter of law that the Appellants had no reasonable basis for terminating Johnson's medical benefits.

[¶20.]     The court also instructed the jury on the legal test to determine whether the Appellants knew that there was no reasonable basis to terminate benefits. However, the court further instructed the jury that it could not consider the only asserted basis for the Appellants' claim that it lacked the requisite knowledge for bad faith—their reliance on the advice of counsel.

[¶21.]     The jury returned a verdict in favor of Johnson, awarding $500,000 for her bad faith claim, $2,750 for the conversion claim, and $45 million in punitive damages. The jury apportioned the damages between the two Appellants by finding 75% of the damages attributable to Liberty Mutual and 25% attributable to UPS.

[¶22.]     Post-trial, the Appellants renewed their motion for judgment as a matter of law, or alternatively a motion for a new trial, arguing Johnson failed to prove bad faith and failed to justify the punitive damages award. The Appellants also moved for remittitur, or alternatively, a new trial. Following a hearing, the circuit court denied all the Appellants' motions, but reduced punitive damages to $10 million dollars, citing constitutional concerns.[4] The court also reduced the conversion award to $2,042.50.

[¶23.]     The Appellants raise several issues on appeal, which we restate as follows:

> 1.     Whether the circuit court erred when it determined that the Appellants lacked a reasonable basis for denying

---

4.     "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 44, 667 N.W.2d 651, 665 (quoting *State Farm v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519-20, 155 L. Ed. 2d 585 (2003)).

Johnson's workers' compensation benefits because their obligation to pay was not fairly debatable.

2.  Whether the circuit court erred when it determined that the Appellants could not use evidence of their attorney's advice to argue they lacked the requisite knowledge for a finding of bad faith.

3.  Whether the circuit court abused its discretion in its evidentiary rulings and jury instructions.

4.  Whether the circuit court erred when it allowed Johnson's bad faith claim to proceed with allegedly insufficient evidence of pecuniary damages.

5.  Whether the circuit court erred when it failed to vacate the punitive damages award.

[¶24.]    By notice of review, Johnson raises two additional issues:

1.  Whether the circuit court abused its discretion when it reduced the jury's punitive damages award.

2.  Whether the circuit court erred when it failed to award post-judgment interest.[5]

[¶25.]    Given our holding, it is necessary to address only the Appellants' first three issues dealing with bad faith liability.

## Standard of Review

[¶26.]    "We review a circuit court's entry of summary judgment under the de novo standard of review." *Zochert v. Protective Life Ins. Co.*, 2019 S.D. 84, ¶ 18, 921 N.W.2d 479, 486 (quoting *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700).  We also review "a circuit court's decision to grant or deny a

---

5.    In her docketing statement, Johnson identified a third issue, challenging the circuit court's decision to exclude evidence that the Appellants paid over $1.2 million in attorney fees defending Johnson's claims.  However, Johnson did not develop the argument in her brief, and we deem the issue abandoned.

motion for judgment as a matter of law . . . de novo . . . ." *Magner v. Brinkman*, 2016 S.D. 50, ¶ 13, 883 N.W.2d 74, 81. "When conducting a de novo review, 'we give no deference to the circuit court's decision.'" *Zochert*, 2018 S.D. 84, ¶ 18, 921 N.W.2d at 486 (quoting *Oxton v. Rudland*, 2017 S.D. 35, ¶ 12, 897 N.W.2d 356, 360).

[¶27.] Our standard of review for evidentiary rulings "requires a two-step process[:] first, to determine whether the trial court abused its discretion in making an evidentiary ruling; and second, whether this error was a *prejudicial error* that 'in all probability' affected the jury's conclusion." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491. "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Andrews v. Ridco, Inc.*, 2015 S.D. 15, ¶ 14, 863 N.W.2d 540, 546 (quoting *In re Jarman*, 2015 S.D. 8, ¶ 19, 860 N.W.2d 1, 9).

[¶28.] "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *Bertelsen v. Allstate Ins. Co.* (*Bertelsen II*), 2011 S.D. 13, ¶ 26, 796 N.W.2d 685, 695 (quoting *Wangsness v. Builders Cashway, Inc.*, 2010 S.D. 14, ¶ 10, 779 N.W.2d 136, 140). "However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions . . . ." *Id.* (quoting *Wangsness*, 2010 S.D. 14, ¶ 10, 779 N.W.2d at 140). We review the circuit court's denial of a motion for new trial under the abuse of discretion standard. *Center of Life Church v. Nelson*, 2018 S.D. 42, ¶ 31 n.3, 913 N.W.2d 105, 113 n.3.

## Analysis

### *Bad Faith in Workers' Compensation Cases*

[¶29.]     Traditionally, bad faith claims against insurers have arisen in either a third-party or a first-party context.  Third-party bad faith is "based on principles of negligence and arises when an insurer wrongfully refuses to settle a case brought against its insured by a third-party."  *Hein v. Acuity*, 2007 S.D. 40, ¶ 9, 731 N.W.2d 231, 235.  First-party bad faith, by contrast, is an intentional tort that most often occurs when an insurer violates the contract with its insured and "consciously engages in wrongdoing during its processing or paying of policy benefits . . . ."  *Id.* ¶ 10.

[¶30.]     We have explained that bad faith in a workers' compensation context is unique:

> Wrongful conduct toward an employee claimant by the
> employer's insurer in a workers' compensation case does not fit
> the traditional definition of either first- or third-party bad faith.
> A bad faith claim related to workers' compensation is not based
> on an insurer's refusal to settle its own insured's suit as in third-
> party cases, but exists when an insurer breaches its duty to deal
> in good faith and fairly when processing a workers'
> compensation claim.  And, unlike first-party bad faith, the
> claimant, not the insured employer, brings the action against
> the insurer.  Nonetheless, it is within the first-party bad faith
> context that multiple jurisdictions, including South Dakota,
> recognize a bad faith cause of action based on an insurer's
> conduct in a workers' compensation case.

*Id.* (citing *Champion v. U.S. Fid. & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)).

[¶31.]     "[W]orkers' compensation bad faith will not arise whenever an insurer's conduct toward a claimant is unreasonable."  *Id.* ¶ 18.  Instead, an

employee alleging a bad faith denial of workers' compensation benefits must satisfy the specific requirements of a two-part test:

> (1) There was an absence of a reasonable basis for denial of policy benefits; and
>
> (2) The insurer knew or recklessly disregarded the lack of a reasonable basis for denial.

*Id.* ¶ 14 (quoting *Champion*, 399 N.W.2d at 324).

[¶32.]     The insurer, however, is permitted to "challenge claims which are fairly debatable" and, thus, "will be found liable only where it has intentionally denied . . . a claim without a reasonable basis." *Id.* (quoting *Champion*, 399 N.W.2d at 324). As we held in *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity* (*DM&E*):

> If an insured's claim is fairly debatable either in fact or law, an insurer cannot be said to have denied the claim in bad faith. The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish that the insurer had a reasonable basis to deny the claim. The focus is on the existence of a debatable issue, not on which party was correct.

2009 S.D. 69, ¶ 20, 771 N.W.2d 623, 630 (quoting 46A C.J.S. *Insurance* § 1873 (2008)). In evaluating a bad faith claim, "we must look to 'the facts and the law available to the insurer at the time it made the decision to deny [benefits].'" *Bertelsen v. Allstate Ins. Co.*, (*Bertelsen III*), 2013 S.D. 44, ¶ 17, 833 N.W.2d 545, 554 (quoting *DM&E*, 2009 S.D. 69, ¶ 19, 771 N.W.2d at 629) (*abrogated on other grounds by Magner*, 2016 S.D. 50, 883 N.W.2d 74).[6]

---

6.     Where, as here, a circuit court determines some or all of the issues in a case through pretrial summary judgment proceedings, we will affirm only when

(continued . . .)

***Reasonable Basis for Denial if Law is Fairly Debatable***

[¶33.]    Before discussing SDCL 62-7-33 and the development of decisional law surrounding efforts to modify or terminate benefits, we begin by stating a more fundamental set of rules.  The first lies at the heart of our judicial system: Parties must obey a valid order unless or until it has been vacated, modified, or overturned.  *See Merrill v. Altman*, 2011 S.D. 94, ¶¶ 21-22, 807 N.W.2d 821, 826 (discussing the "nullify[ing] . . . effect" if this Court were to recognize a petition "in violation of previously entered . . . court orders").  So central is this principle to the "orderly . . . administration of justice" that it applies even when the order is erroneous or infirm.  *Maness v. Meyers*, 419 U.S. 449, 459, 95 S. Ct. 584, 591, 42 L. Ed. 2d 574 (1975); *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S. Ct. 677, 696, 91 L. Ed. 884 (1947).  It follows as an interior principle that parties may not subvert a valid order simply by overlooking it.  *See Osgood v. Osgood*, 2004 S.D. 22, ¶ 21, 676 N.W.2d 145, 151 (quoting *Storm v. Durr*, 2003 S.D. 6, ¶ 17, 657 N.W.2d 34, 38) ("[C]ourt order[s] are not invitations, requests, or even demands; they are mandatory.").

[¶34.]    This idea of giving effect to valid orders is the premise underlying our law of civil contempt.  Indeed, the first requirement in an effort to invoke a court's civil contempt power is the existence of a valid order.  *See DeHaven v. Hall,* 2008 S.D. 57, ¶ 29, 753 N.W.2d 429, 439 (expired order was no longer a valid order capable of enforcement through contempt).

---

(. . . continued)
    there are no genuine issues of material fact and the legal questions have been correctly decided.  *DM&E*, 2009 S.D. 69, ¶ 14, 771 N.W.2d at 628-29.

[¶35.]     We have not distinguished between judicial orders and valid final administrative orders on issues of enforceability and preclusive effect. "An unappealed administrative decision becomes final and should be accorded res judicata effect." *Jundt v. Fuller*, 2007 S.D. 62, ¶ 12, 736 N.W.2d 508, 513. In the specific context of workers' compensation, we have recognized the res judicata effect of a final Department decision. *Call v. Benevolent & Protective Order of Elks*, 307 N.W.2d 138, 140 (S.D. 1981).[7]

[¶36.]     Applying these rules here, we agree with the circuit court's conclusion that the Appellants' duty to pay Johnson's medical benefits was not fairly debatable because it was stated in a final administrative order. Their decision to terminate Johnson's benefits, therefore, lacked a reasonable basis. Under basic principles that have long animated the rule of law, the Appellants were obligated to comply with the 2006 DOL Order unless or until the order was altered by the Department to relieve them of their obligation.

[¶37.]     As it was, the 2006 DOL Order resolved the question of Johnson's medical benefits, stating unequivocally that Johnson was "entitled . . . to necessary, suitable, and proper medical expenses causally related to her work-related groin condition." The Appellants do not dispute the validity of the order, or its text, or its

---

7.     As further explained in *Call*, workers' compensation decisions are not final in the res judicata sense where, in exceptional cases, the Department maintains jurisdiction over specific claims. However, even in these instances, the parties would still need to invoke the authority of the Department to seek a change in the order.

finality.[8]  Indeed, they complied with it, at least until the point they elected to disregard it in favor of Dr. Norback's IME.  Any obligation to read the 2006 DOL Order as authoritative and binding was, in their view, only revealed by our decisions issued in other cases *after* their decision to terminate benefits.  However, we cannot accept this argument because it does not align with plain statutory requirements or the historical development of our decisional law.

[¶38.]        As to the former, the unremarkable fact that SDCL 62-7-1 authorized the Appellants to require Johnson to undergo an IME does not mean they could condition their compliance with the 2006 DOL Order upon the IME's results.  Indeed, we cannot envision an interpretation of SDCL 62-7-1 that would support an employer's unilateral decision to terminate previously ordered benefits.  Though the text allows an employer to assess an employee's condition which may, in turn, impact a claim for benefits, SDCL 62-7-1 does not cede the Department's authority to make that determination to the employer:

> An employee entitled to receive disability payments shall, if requested by the employer, submit himself or herself at the expense of the employer for examination to a duly qualified medical practitioner or surgeon selected by the employer, at a time and place reasonably convenient for the employee . . . .  The examination shall be for the purpose of determining the nature, extent, and probable duration of the injury . . . and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this title . . . .

---

8.        Under SDCL 62-7-18, a petition for review is not considered final until it is "deemed the final decision of the department and subject to appeal."

[¶39.]     Nor does the additional consideration of SDCL 62-1-1(7) support a reasonable legal conclusion that a favorable IME could authorize the Appellants to act on their own to terminate Johnson's benefits.  Subsection (b) of the statute merely defines a compensable injury as one that "remains a major contributing cause of the disability, impairment, or need for treatment" when it combines with a preexisting condition.  SDCL 62-1-1(7)(b).  Indeed, the only statutory authority to modify or terminate benefits—either now or in 2010 when the Appellants terminated Johnson's medical benefits—is found at SDCL 62-7-33, which provides in relevant part:

> Any payment, including medical payments . . . made or to be made under this title may be reviewed by the Department of Labor and Regulation . . . at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action.

[¶40.]     The provenance of our cases identifying this statutory procedure as the correct method for modifying a final Department order dates back nearly thirty years before the Appellants' decision to terminate Johnson's benefits.  In our 1981 decision in *Call*, we observed that the Department's final decision regarding benefits could "be modified only upon a showing of change of condition pursuant to SDCL 62-7-33."  307 N.W.2d at 140.  Though this statement was not central to the holding in *Call*, we unmistakably incorporated it into our decisional law less than a decade later when we described SDCL 62-7-33 as the means of invoking the Department's authority to modify final workers' compensation orders.  *See Whitney v. AGSCO Dakota*, 453 N.W.2d 847, 850 (S.D. 1990) (citing *Call*, 307 N.W.2d 138)

("By virtue of SDCL 62-7-33, Department has continuing jurisdiction to adjust any payment from the original injury based upon a change of condition occurring since the last award."). In *Larsen v. Sioux Falls School District*, three years later, we again cited the statute as "[a] statutory exception to the finality rule . . . which gives the Department continuing jurisdiction to adjust payments when there is a physical change in the employee's condition from that of the last award." 509 N.W.2d 703, 707 (S.D. 1993); *see also Sopko v. C & R Transfer Co.*, 1998 S.D. 8, ¶ 11, 575 N.W.2d 225, 230 (holding that SDCL 62-7-33 is "South Dakota's statutory exception to the finality rule").

[¶41.] Against this historical backdrop, the Appellants' argument that we first recognized SDCL 62-7-33 as the exclusive means of modifying a Department order after their 2010 decision to terminate Johnson's medical benefits is not sustainable. As it relates to SDCL 62-7-33, our 2011 decision in *Stuckey v. Sturgis Pizza Ranch* simply acknowledged, again, that the statute is the means by which a party in a workers' compensation action can seek to modify a previous award of benefits. 2011 S.D. 1, ¶ 27, 793 N.W.2d 378, 389.

[¶42.] Our subsequent decision in *Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc.* directly rejected an employer's effort to use a compulsory IME to unilaterally terminate workers' compensation benefits, but it did so under previously established legal principles, including SDCL 62-7-33. 2014 S.D. 64, ¶ 29, 834 N.W.2d 878, 886 (citing *Kasuske v. Farwell, Ozmun, Kirk & Co.*, 2006 S.D. 14, ¶ 12, 710 N.W.2d 451, 455). If *Hayes* was novel in any way, it was because it involved an employer's continuing obligation to pay benefits following an order dismissing—

not granting—a claimant's request for workers' compensation benefits. *Id.* ¶ 3. However, any imprecision turning on that distinction would have no impact here because the 2006 DOL Order was a final order to pay benefits.

[¶43.]	In an attempt to harbor their position within *Hayes*' holding, the Appellants claim that prior to *Hayes*, no case had held that SDCL 62-7-33 was the only way an *employer* could seek to modify a workers' compensation order. The claim is too ambitious, however, for two reasons. First, the Appellants overlook our decision in *Whitney* where we held that SDCL 62-7-33 was the means by which the Department can modify a final award of benefits. 453 N.W.2d at 850. Second, nothing in the text of SDCL 62-7-33 could support the argument that the statute is restricted to requests by the employee to modify a final workers' compensation order. In fact, the opposite is true. The provisions of the statute expressly authorize the modification of an order "at the written request *of the employer* or of the employee" with the possibility that the workers' compensation payments "may be *ended, diminished*, increased, or awarded . . . ." SDCL 62-7-33 (emphasis added).

[¶44.]	Simply put, there was no change in the law occasioned by our decisions in *Stuckey* and *Hayes*. It may well be that the prevailing currents of workers' compensation practice had, temporarily, discounted our precedent and the text of SDCL 62-7-33 by viewing the use of an IME as a means of terminating an employee's benefits.[9] But that does not make the practice right, or reasonable, or

---

9.	The Appellants suggest that comments by the ALJ, indicating an unfamiliarity with an employer's use of SDCL 62-7-33, supports the view of an unsettled legal landscape. We do not believe these anecdotal observations should be read as an authoritative statement of the law, particularly given

(continued . . .)

render the underlying legal premise fairly debatable. *See Larsen*, 509 N.W.2d at 707-08 (noting that we were "at a loss to explain Department's former practice" of treating a "Form 111 agreement" as a non-final award, considering its text and our prior decisions). Even after a concerted effort to offset any distorting effects from the passage of time, we cannot conceive of a reasonable basis to justify the Appellants' decision to terminate Johnson's medical benefits.

[¶45.] Therefore, the circuit court correctly determined that Schulte's advice unreasonably deviated from existing law and the obligations imposed by the 2006 DOL Order.[10] There are no disputed issues of material fact, and the Appellants lacked a reasonable basis for terminating Johnson's medical benefits because their obligation to pay was not fairly debatable. Under the circumstances, the court properly determined as a matter of law the first requirement of the bad faith test was met. *See Champion*, 399 N.W.2d at 324. However, we must further consider whether the circuit court incorrectly extended this initial ruling beyond its limit into the second distinct bad faith element—concerning the Appellants' knowledge—

---

(. . . continued)
the finality of the 2006 DOL Order, our established body of decisional law, and the clear and unambiguous text of SDCL 62-7-33.

10. On appeal, the Appellants argue that Schulte's statutory analysis combined with what they describe as imprecision in the 2006 DOL Order to provide a reasonable basis for denying coverage. However, during an offer of proof before the circuit court, Schulte testified that he relied solely on his interpretation of SDCL 62-1-1(7) and SDCL 62-7-1 without mentioning the 2006 DOL Order or the findings and conclusions upon which it is based. Under these circumstances, we will not consider the Appellants' argument about the breadth of the 2006 DOL Order or any alleged ambiguity in its provisions. However, the argument is unavailing in any event because it would, at most, only address a decision to deny a specific disputed claim for medical treatment, not a decision to terminate all medical benefits.

through its additional summary judgment ruling, jury instructions, and evidentiary rulings.

***Knowledge of a Lack of Reasonable Basis for Denial***

[¶46.]        In addition to establishing the absence of a reasonable basis for denying workers' compensation benefits, a plaintiff alleging bad faith must also prove an employer's and insurer's "knowledge or reckless disregard of the lack of a reasonable basis for denial." *See Bertelsen III*, 2013 S.D. 44, ¶ 52, 833 N.W.2d at 563 (quoting *DM&E*, 2009 S.D. 69, ¶ 17, 771 N.W.2d at 629). Even where a court can determine an obligation to pay was not fairly debatable as a matter of law, we emphasized in *Bertelsen III* that the knowledge inquiry is a separate factual determination for the jury. *Id.* ¶ 54.

[¶47.]        Our effort in *Bertelsen III* to formulate a list of knowledge considerations such as "negligence in processing the claim, an inadequate proof of loss, or an agreement by the insured to delay payment" was illustrative, not exhaustive. *Id.* Indeed, long before our decision in *Bertelsen III*, we recognized that an insurer's reliance on the advice of counsel is among the factors that may be considered when a jury is determining a question of bad faith:

> [W]e do not agree that reliance on counsel is the sole decisive test of good faith in the present action. It is merely one factor to be considered. An insurer cannot discharge its entire responsibility to an insured "by simply employing a competent attorney and abiding by his decision concerning advisability of settlement."

*Crabb v. Nat'l Indem. Co.*, 87 S.D. 222, 228, 205 N.W.2d 633, 636 (1973) (internal citation omitted).

[¶48.]     Here, the circuit court erred when it expanded its decision that the Appellants lacked a reasonable basis for their denial into the separate issue of their knowledge.  Despite the court's effort to apply our decision in *Bertelsen III*, it overlooked the critical fact that the insurer in that case did not obtain the advice of counsel concerning its obligation to pay.

[¶49.]     In *Bertelsen III*, we accepted the argument that the Plaintiff's auto insurer lacked a reasonable basis for denying benefits following the initial denial by the Plaintiff's workers' compensation insurer.  We focused our review of the jury's bad faith verdict on the insurer's knowledge, and framed the corresponding issue as "whether there was sufficient evidence for the jury to find that [the auto insurer] delayed payment with knowledge of the absence of a reasonable basis to delay payment or in reckless disregard of the absence of a reasonable basis to delay payment."  *Bertelsen III*, 2013 S.D. 44, ¶ 18, 833 N.W.2d at 555.  However, we observed the insurer made no effort to learn or clarify the extent of its clear statutory obligation to pay benefits and "could have contacted legal counsel" to ascertain the controlling law.  *Id.*, 2013 S.D. 44, ¶ 20, 833 N.W.2d at 555 (quoting *Walz v. Fireman's Fund Ins. Co.*, 1996 S.D. 135, ¶ 13, 556 N.W.2d 68, 72).  Under the circumstances, knowledge of the duty to pay the insured's claim could be directly imputed to the insurer which was, therefore, prohibited from arguing that it "reasonably believed it had no statutory duty to pay upon [the workers' compensation insurer's] denial of . . . coverage."

[¶50.]     In this case, however, the Appellants did seek the assistance of counsel.  Though we agree with the circuit court that Schulte's advice did not

provide a reasonable basis for denying Johnson's benefits, it does not automatically follow that the Appellants knew the degree to which his advice was improvident. The circuit court's determination that the absence of a fairly debatable reason for terminating Johnson's benefits necessarily meant that the Appellants "understood [their] legal duties" marks the critical point at which the court incorrectly transferred its ruling from the first bad faith element to the second. By reconsidering and granting Johnson's summary judgment motion to preclude the Appellants' advice-of-counsel defense, the court collapsed the two distinct elements of bad faith into one. There were, to be sure, genuine issues of disputed material fact regarding the Appellants' knowledge that should have prevented the circuit court's grant of partial summary judgment.

[¶51.] In this regard, the Appellants claimed that they lacked knowledge of their obligation to continue paying benefits because of Schulte's advice. They claimed that they consulted Schulte in a good faith effort to seek assistance because the assigned claims examiner lacked experience with South Dakota workers' compensation law. Citing the fact that part of Schulte's practice focused upon workers' compensation defense for employers and insurers, the Appellants contended that Schulte was not consulted simply as an expedient to immediately terminate Johnson's medical benefits, but instead to provide legal advice on the extent of their ongoing obligation.

[¶52.] Whether the jury would have accepted the Appellants' argument that they lacked knowledge of a reasonable basis for terminating Johnson's benefits is a separate inquiry, but one the jury was not allowed to meaningfully undertake. The

circuit court excluded the specific evidence of Schulte's advice and foreclosed the jury's consideration of the Appellants' knowledge with the formulation of its jury instructions. Absent this testimony, the jury could not properly determine whether the Appellants knew they had no reasonable basis or had acted with reckless disregard to terminate Johnson's medical benefits.

[¶53.] Based upon its summary judgment ruling on the Appellants' advice-of-counsel defense, the circuit court's jury instructions had a profound impact on the bad faith verdict for Johnson. For example, Instruction 25 detailed an employer's liability for an employee's work-related injury and the legal process an employer must follow to modify or terminate a claimant's benefits through the Department before concluding, "You are instructed that the [Appellants] may not argue, and you may not conclude that the [Appellants] misunderstood these legal duties." In addition to holding the Appellants to the same standard as an experienced attorney, Instruction 25 ended the jury's inquiry into the Appellants' knowledge concerning the absence of a reasonable basis to terminate Johnson's benefits.

[¶54.] Further, Instruction 27 expressly advised the jury that it could not consider Schulte's advice "when determining whether [the Appellants] knew there was no reasonable basis . . ." for denying benefits. The circuit court allowed limited use of only the bare fact that Schulte advised the Appellants to obtain an IME, but this evidence was incomplete and of little utility if the purported significance of the IME and its context are excluded. The court could have instructed the jury that evidence relating to Schulte's advice could be used only for a limited purpose, i.e., it could not be used to consider whether a reasonable basis existed to terminate

Johnson's medical benefits, but the jury could consider it solely to determine the Appellants' knowledge. Evidence of Schulte's advice was surely relevant to this determination, and it should not have been excluded.

[¶55.] The circuit court abused its discretion in excluding this evidence as it related to the question of the Appellants' knowledge. Likewise, the circuit court abused its discretion by giving the jury instructions that effectively directed a verdict in favor of Johnson on the question whether the Appellants knew of or recklessly disregarded the lack of a reasonable basis for denial of the medical benefits. We believe these errors impacted the outcome of the case and require a retrial on the Appellants' liability for bad faith.

[¶56.] Additionally, the details of Schulte's advice were relevant to the question of punitive damages.[11] A circuit court may allow a jury to consider a punitive damages award only after a finding of "willful, wanton or malicious conduct on the part of the party claimed against." SDCL 21-1-4.1. Instruction 36 allowed jurors to consider, as a factor in determining the amount of punitive damages, "[w]hether the harm was the result of intentional malice, trickery or deceit, or mere accident." Schulte, whom the circuit court found to be credible, emphatically denied any effort to act maliciously. However, through the court's evidentiary rulings and jury instructions, the jury was unable to assess the strength of Schulte's explanation for his advice in its determination whether to award punitive damages or the amount.

---

11.   The issue of punitive damages was not bifurcated from the liability portion of the trial, and we are not suggesting bifurcation was required, particularly given the fact that the parties did not request it.

## Conclusion

[¶57.]       The circuit court correctly determined that the Appellants lacked a reasonable basis for terminating Johnson's medical benefits because her claim to continued benefits was not fairly debatable.  However, the court's subsequent decision to extend its fairly debatable ruling into a broader prohibition of any argument or evidence suggesting that the Appellants knew they lacked a reasonable basis for terminating Johnson's benefits was erroneous.  The error led to the exclusion of relevant evidence and incorrect jury instructions that impacted the jury's verdict.  Under the circumstances, the Appellants were prejudiced.  The judgment for Johnson is reversed, and the case is remanded to the circuit court for retrial.

[¶58.]       GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and MEANS, Circuit Court Judge, concur.

[¶59.]       MEANS, Circuit Court Judge, sitting for vacancy.